CAROLINE BARNES and others v. MYRA GAINES and Husband.

The word "*actual*" in art. 43, of the Code of Practice, which requires that a peti-
tory action must be brought against the person in actual possession of the immove-
able, does not mean strictly a natural or corporeal possession, in the sense of arts.
3391, 3393, of the Civil Code. It applies to a civil, as well as to a natural pos-
session, where the defendant pretends to possess as owner. The civil possession
of the defendant at the time of suit, preceded by an actual corporeal detention of
the property, will suffice.

Petitory actions, or actions of revendication, must be brought before the ordinary tri-
bunals, even when instituted against successions. C. P. 983.

Clauses in a will limiting the testatrix's power to dispose of the legacies after their
reversion to herself, are nugatory, and do not amount to a substitution.

Where a testatrix directed by her will " that in case any of the legatees should die
before her, the share of the deceased legatee shall go to his children, their heirs or
assigns," and this direction was not changed by her, after the death of the legatee :
*Held*, that this clause does not contain a substitution ; that the death of either of
the legatees before the testatrix, could not prevent her from disposing of her pro-
perty as she pleased in favor of any other persons ; and that the right of the lega-
tee, first instituted, not having accrued, the children, the eventual legatees, would
take under the will, without reference to the previous institution.

APPEAL from the District Court of the First District, *Bucha
nan*, J.

SIMON, J.*  The plaintiffs, who style themselves the testa-
mentary heirs of Mary Clark, each for one-fourth part of her
estate, as bequeathed to them respectively by the last will of the
said Mary Clark, who, it is alleged, was the instituted universal
heir, and legatee of Daniel Clark, her late husband, as appears
by his last will and testament, bearing date the 20th of May,
1811, duly admitted to probate, represent that said Daniel Clark,
at the time of his death, was seised and possessed, in full owner-
ship, of the property described in the petition, all situated and ly-
ing in the *Faubourg* St. John, in the City of New Orleans ; that
the whole of said property was acquired by Daniel Clark, and is
embraced in the limits of three several purchases made by him

---

*MARTIN, J., being interested in the question, did not sit on the argument of this
case.

from the individuals named in said petition ; that as the heirs
and legal representatives of Mary Clark, and of Daniel Clark,
they are legally entitled to the possession, and ownership of all
the lots, and squares of ground described in their petition, in the
proportion of one undivided fourth part to each of the petitioners ;
but that the defendants have unlawfully, and without any just or
legal title, taken possession of all the said lots and squares of
ground, and refuse to deliver possession thereof to the petitioners,
who also allege, that the rents and profits issuing out of the same,
amount to $20,000 : wherefore, they pray, that judgment may
be rendered in their favor against the defendants, decreeing the
whole of the said property to belong to them, the plaintiffs, each
for the one undivided fourth part thereof ; that should any legal
impediment arise to the recovery by one or more of the peti-
tioners, then that the share, or shares, of those thus excluded may,
upon the principles of accretion, enure to and be received by those
whose claims are not obnoxious to the like legal impediments ; and
that judgment be also rendered against the defendants, for the
sum of $20,000, rents and profits.

The defendants first made application for the removal of this
cause to the Circuit Court of the United States, for the Ninth
Circuit, and Western District of the State of Louisiana, which
application was refused ; whereupon they filed their exceptions and
answer, in which they state, that before the institution of this
suit, there was pending before the United States Circuit Court, a
certain suit in chancery, wherein the respondents are complain-
ants, and the plaintiffs defendants ; which suit is still pending,
and involves all the subject matter sought to be involved in this
action.    Wherefore, they pray, that the present suit may be dis-
missed.    But if these exceptions be overruled, said defendants
deny all the allegations contained in the plaintiffs' petition.

Under these pleadings, this cause was tried before a jury, who
were unable to agree upon a verdict, and they having been dis-
charged, the suit was continued. A few .days afterwards, the
defendants obtained leave to file a further and amendatory an-
swer, alleging that they are not now, nor were they at the time
of the inception of this suit, nor have they ever been, at any other
time, in the actual, natural, civil, or any other kind of possession

Barnes and others v. Gaines and Husband.

of the property in question; they moreover deny, that any amicable demand to deliver up the possession of the property was ever made by the plaintiffs; they deny, that the property claimed belongs to the succession of Mary Clark; and deny all the allegations contained in the petition.

In this situation, the case was tried before a second jury. During the trial, on the production by the defendants of a letter from Jane Campbell, one of the plaintiffs, and on the motion of said plaintiff's counsel, the suit was discontinued as to the said Jane Campbell; and the jury having returned a verdict for the defendants, the plaintiffs, attempted to obtain a new trial, which was refused by the Judge, *a quo*, although, in his opinion, the verdict was contrary to law and evidence; whereupon, the inferior court rendered its judgment agreeably to the verdict, and the plaintiffs appealed. The reasons assigned by the Judge for overruling the plaintiff's motion for a new trial are, that the cause had already been before the two juries; that very extraordinary efforts had been made to influence public opinion through the newspapers, in relation to this cause, which rendered it more than probable, that it would be difficult to empanel an entirely unbiassed jury; and that, under such circumstances, if a new trial should be allowed, there was too much reason to fear a series of mistrials to the ultimate injury, if not sacrifice of the rights of the parties.

No attempt has been made, or renewed before us, for the removal of this cause to the United States' Circuit Court, and we must consider this as abandoned by the defendants. With regard to the plea of *litis pendentia*, the record contains no evidence to sustain it, and we shall, therefore, proceed to examine the case upon its merits, as presented by the pleadings and the evidence.

This is a petitory action, which appears to be resisted by the defendants upon three distinct grounds: 1st. That the plaintiffs have not shown, and cannot show, that the defendants ever were in the actual possession of the property sued for, nor that they were in actual possession at the time, that this suit was instituted. It is contended, that no petitory action can be maintained without this proof. 2d. That the plaintiffs, have not shown

themselves to be the owners of the property. 3d. That the will of Mary Clark, under whom they claim, is void on account of containing clauses of substitution.

I. In support of this ground of defence, which was made the subject of an amended answer filed after the first trial, in which the want of actual possession is specially pleaded, the defendants' counsel relies upon the 43d art., of the Code of Practice, which says : " The petitory action, or one by which real property is claimed, must be brought against the person who is *in the actual possession of the immoveable ;*" and hence it is inferred, that unless the plaintiffs show, that the defendants were, at the time of the institution of this suit, in the actual, nay, in the natural, or corporeal possession of the property in dispute, they cannot maintain it. It is first worthy of notice, that the defendants did not disclaim, in their first answer, the possession alleged in the petition, but joined issue on the merits. Could they do it to any effect, by the special plea contained in their subsequent and amended answer ? *This is a question which does not appear to have been* made in the court below, as the filing of the amendatory answer was not opposed or objected to.

The evidence upon this point establishes, that on the 7th of July, 1836, a lease of several squares, and lots comprised in the property in contest was executed by notarial act by the defendant, Myra Clark, in favor of one T. B. Harper, for the term of two years ; that said Harper *was in possession* of the property mentioned in the lease for about eighteen months, after which he was called upon by the defendant, Myra Gaines, then Mrs. Whitney, to cancel the lease. At that time, she and her husband claimed the property as theirs ; and the object of the lease was, that Harper *should keep possession of the property*, or sub-lease it to others. The lot No. 5, upon which buildings were erected, was only leased for six months. On the 4th of June, 1836, a sale of a considerable part of the property described in the petition, was passed by Mr. and Mrs. Whitney to Harper, by an authentic act, in which it is expressed, that said property was delivered to the vendee *who acknowledges possession thereof*. This property was re-sold by Harper, to his former vendors on the 10th of April, 1837, by a notarial act, in which it is mentioned, that

the vendees acknowledge possession thereof.   On the 22d of June, 1838, a certain suit was instituted by the defendant Myra, against F. Buisson, who, as Sheriff, had seized a large portion of the property in dispute, in which she claimed said property as her own, alleging, in her petition, that *she was. in the real, and actual possession of the same, as owner ;* and that, *notwithstanding her said ownership and possession,* Frederick Buisson, had seized it, &c.   The evidence further shows, that one of the defendants, E. P. Gaines, said and acknowledged, that he had possession of the property, which he qualified as a conservative or provisional possession.   This was said in open court, on the former trial of this suit, or of a suit between the same parties before the District Court.

With this evidence before us, how can the defendants disclaim their ever having had the property in their actual possession. This is acknowledged by them in their acts with Harper.   They leased the property, or part of it, to Harper, who possessed for them, and under them.   They sold the same to Harper, who acknowledged himself to be in possession thereof ; and at a later period they alleged, in a judicial proceeding, as the basis of their action against Buisson, that they were, that is to say, that Myra, the principal defendant, was in the real and actual possession of the property.   They cannot now gainsay their own acts and admissions ;  and it seems to us clear, that the plaintiffs have satisfactorily shown that some time before the institution of this suit (brought in April, 1841,) the defendant, Myra, repeatedly pretended to be, and was actually, in the possession of the property in controversy. It is true, that it has not been proved that the defendants were in the natural or corporeal possession of the property, at the time when this suit was instituted ;  but we are not ready to understand that the word " *actual*" used in the 43d art. of the Code of Practice, should mean strictly a natural or corporeal possession, in the sense of arts. 3391 and 3393, of the Civil Code.   It may, perhaps, apply to the civil, as well as to the natural possession, provided the defendant in a petitory action, contradictorily with whom the question of title is to be settled, be really pretending to possess the property as owner ;  and without its being necessary to enter into any new discussion upon the different kinds of possession recognized by our

laws, we shall merely refer to the case of *Ellis* v. *Prevost*, 13 La. 230, and 9 La. 251, in which we held, that " in a possessory action, (in which the law requires that the plaintiffs should be *in the real and actual possession* of the thing, Code of Practice, art. 49,) the civil possession of the plaintiff, preceded by an actual and corporeal detention of the property, will suffice." So it must be in a petitory action, where the law requires that the defendant should be in the actual possession of the thing ; otherwise, the same absurdity would result, if a party, whose property is claimed by another who exercises acts of possession over it not amounting to a natural possession, was not permitted to institute a petitory action, unless he is able to prove that his adversary is in the *actual*, nay, *in the corporeal possession* of the property.   It seems to us, that the principles established in the case of *Ellis* v. *Prevost* above quoted, in relation to the kind of possession which the plaintiff should show in a possessory action, are fully applicable to the possession which the law requires the defendant should have in a petitory one.   Indeed, a contrary doctrine would, in our opinion, be preposterous, as the plaintiffs in this suit, who are not in possession of the property sued for, and who cannot bring a possessory action, would be remediless under our laws, and could never sue to recover the property to which they may perhaps have a good title.   The case refered to in 5 La. 356, establishes the general rule, and is not adverse to our present construction of the law.

We think, that this action comes clearly within the meaning of art. 43 of the Code of Practice ; that the acts of possession shown to have been exercised by the defendants, who always claimed the property as owners, are sufficient to enable the plaintiffs to allege that they, said defendants, were in *the actual possession* of the property at the time this suit was brought ; that the previous acts of natural possession on the part of the defendants, continued to have their effect subsequently, as if the property had not ceased to be actually possessed by them ; and that, unless said defendants have succeeded in showing a better title than the plaintiffs, the latter must recover.

II. The defendants' answers do not contain any special denial of the plaintiffs being the heirs of Mary Clark, and of the said

Mary Clark's being the mother and instituted heir of Daniel Clark. We shall, therefore, consider that the identity of the persons who brought this action is sufficiently established ; that is to say, that they are the same persons named in Mary Clark's will, and that the said Mary Clark, under whose will the plaintiffs claim, is the same person named in Daniel Clark's testament.  If the defendants had intended to require proof of their identity, it was their duty to put it at issue.  Now, under the will of Daniel Clark, found in the record, Mary Clark, his mother, is instituted his universal legatee.  He says : "I leave and bequeath unto my mother, Mary Clark, all the estate, whether real or personal, which I may die possessed of."  This will was regularly admitted to probate.  Under the will of Mary Clark, which was also duly admitted to probate, and ordered to be executed in Louisiana, the plaintiffs were all instituted the universal legatees, or devisees of the estate of the deceased.  She orders all her moneys and active debts to be collected, and all her property to be sold by her executors, for the purpose of the proceeds being divided, and distributed into four equal parts to the persons thereinafter named, each for one share, or fourth part thereof ; and the plaintiffs are the persons named in the said will.  It is clear, therefore, that the plaintiffs are entitled to act in the the right of Mary Clark, as the universal legatee of Daniel Clark, deceased.  The record contains also all the title deeds to the property in dispute, as acquired by Daniel Clark, from different individuals ; and it cannot be controverted, that the property described in the petition belongs to his estate, and subsequently to Mary Clark, in whose rights the plaintiffs are now claiming.  We conclude, that the plaintiffs have satisfactorily made out such title to the property claimed as to enable them to recover against the defendants, who have shown no title whatever.  They must be declared to be the owners of the property.

It has been intimated, though not, perhaps, insisted on, that the plaintiffs could not establish their right, and title to the property, claimed, in any other court but the Probate Court, where the estate must be settled.  This is a petitory action, or an action of revendication ; and it is well settled, that such actions are to be brought before the ordinary tribunals, even when instituted

against successions. Code of Practice, art. 983. But here, the defendants appear to be mere strangers to the estate of Daniel Clark; they set up no right under him; and it is no where shown in the pleadings, nor in the record, that they are in any manner concerned, or interested in the estate of the deceased. It is clear, that they have nothing to do before the Probate Court, in relation to the succession, and that the settlement thereof is entirely foreign to the matters at issue.

III. Without its being necessary to recite those parts of Mary Clark's will, which are said to contain clauses of substitution, it will suffice for us to say, that an attentive perusal of its terms has not enabled us to discover any such clause. The dispositions are, that in case any of the legatees *should die before the testatrix*, the share of the deceased legatee should go to his child, or children, their heirs and assigns. This clause is contained in the will with regard to two legatees. As to the third, the legacy is not subject to the same objection, and as to the fourth, who is a minor, the testatrix wishes, that her share should go to such person as she shall choose as her guardian, to be appropriated for her support and maintenance; and, in case of the legatee's dying unmarried, that her portion should be divided between the testatrix's other heirs named in the testament. As this court said in the case of *Duplessis* v. *Kennedy*, 6 La. 241, such clauses " amount to nothing more than a limitation of the testatrix's own power to dispose of the legacies after their reversion to herself, (in this case there would be no reversion, since the right of the legatees never was open,) which would be wholly nugatory, and we cannot say, that this is the essential characteristic of a substitution." The case cited from 13 La. 1 to 8, is not applicable; and, at any rate, it is evident that the death of either of the legatees before that of the testatrix, would not prevent her from disposing of her property, as she pleased, in favor of any other person. There is no obligation to keep and preserve the property; and, even in case of her not changing her will, the right of the legatees first instituted never having accrued, the other legatees eventually substituted to them would clearly take under the will, without any reference being made to the previous institutions. Furthermore, this ground of defence is set up by persons

who have shown no legal interest in the succession of Mary Clark. This, perhaps, would be sufficient to preclude them from opposing it; but, even supposing that they could, it must be pronounced unavailable.

On the whole, we agree with the Judge, *a quo*, in the opinion, that the verdict is contrary to law and evidence. It must be set aside, and our judgment must be in favor of the plaintiffs.

It is, therefore, ordered and decreed, that the judgment of the District Court, be annulled and reversed; and that the plaintiffs, Caroline Barnes, wife of John Barnes, Jane Green, and Eleanor Maniff, wife of Peter Maniff, be, and they are hereby decreed, and declared to be the owners of three undivided fourth parts of the property described in their petition, to be by them recovered of the defendants, 'in the proportion of one undivided fourth part thereof to each of the said plaintiffs, respectively, and that the said defendants pay the costs in both courts.

*Barton* and *Roselius*, for the appellants.

*W. Christy*, for the defendants.