JOSEPHINE MICHEL, Executrix, &c., Appellant *v.* R. G. BEALE, Attorney for Absent Heirs, et als., Appellees.

The expressed will of a testator may be restricted by reputing as not written impossible conditions and conditions contrary to the laws ; but the will cannot be enlarged by giving to a legatee a higher title than the testator intended to give.

A clause in a testament authorizing a legatee to spend for her own private use all the balance of the testator's estate, both real and personal, does not confer the right of disposing of the property by testament.

Effect must be given to the will of the testator according to his intentions, so far as those intentions can be legally carried out.

A testator has clearly a right to provide that the usufruct of the wife might be established for her greater benefit on the proceeds of the sale of his property, rather than on the property itself— but this usufruct must be one in the legal sense.

Where the usufructuary under the will has a right to the usufruct of the property itself, or to require that it be sold and her usufruct established on its proceeds and prefers the latter, the sale should be made at public auction, to the highest bidder, and after public notices by advertisement.

APPEAL from the Sixth Judicial District Court, parish of East Baton Rouge, *Robertson*, J.

*Lacey & Dufour*, for plaintiff and appellant.   *Beale*, attorney for absent heirs.

OGDEN, J.   The object of this suit on the part of the plaintiff was to have her rights under the will of her deceased husband, *John P. Michel*, established

contradictorily with the attorney for the absent heirs, and with the legatees named in the will. Her husband died in February, 1854, leaving a large estate real and personal, all of which belonged to the community of acquets and gains, which had existed between his wife and himself.

The petitioner, who is the executrix of her husband's will, prays first to be recognised as the owner of one undivided half of all the property, as belonging to the community. To that she has clearly a right, and it has been acceded to her by the judgment of the Court below. She next prays to be decreed to be the legatee of all the movables and personal property, bank stock, claims, rights and credits, and of all the silver ware, watches or jewelry found in the succession. The will contains the following clause : "I bequeath to my dear and beloved wife all the movable property, silver ware, watches or jewels, for her to dispose of them as she thinks fit, and all the balance of my real and personal estate, I bequeath them as follows : after my death and that of my beloved wife, in case she has not spent for her own private use, the whole of my estate, as I authorize her so to do, but what will be left after her death, I desire that one half of what will be left be given to my heirs hereinafter mentioned in the manner in which I shall dictate, for each of them, and in the following words to-wit: The testator then proceeds to say that he bequeaths to certain nephews and neices, and to two of his god-children, certain proportions of his property, leaving, however, one eighth of his property, undisposed of. The judgment of the Court below has allowed the plaintiff's claim to a particular legacy of all the movable property with the silver ware, watches and jewels. The defendants, who are the appellees, not having asked for any amendment of the judgment, it must remain undisturbed as to that claim. The plaintiff in the third and last place prays that she be decreed to have the legal and equitable right, power and authority to take possession, and that possession be given to her of all the real estate and slaves found in the succession of the deceased, to use and enjoy the same according to her own free will and pleasure, without any liability to account to any person or persons whomsoever, to mortgage, lease, and encumber, to sell, bargain and dispose of said property, upon gratuitous or onerous conditions, and in any way, form or manner the petitioner may think proper.

This claim is set up by the plaintiff under the above clause in the will, and a clause preceding it, which is in the following words :

" As I wish to give proof to my dear and beloved wife, *Josephine Michel,* of all my gratitude, friendship and love, which I have always had, and which I will always entertain for her, as long as I live, I leave and beg her to be my usufructuary during her life time, and to give her the enjoyment and usufruct of all I possess, in general, of which I shall not have disposed by these presents, or other property before my death, during all her life time, for her to enjoy the same peaceably, without any kind of trouble by any person whatever, *hereby granting to her as much power as I am able to give:* and, whereas, it is almost impossible to cultivate the plantation after my death, *I authorize her to sell it,* AS WELL AS ALL OTHER PROPERTY AND SLAVES, ACCORDING TO HER OWN WISH, AND AS SHE WILL SEE FIT, without any let or hindrance, and without being compelled to furnish security."

The Judge of the Court below decreed that the petitioner should be recognized as the usufructuary of the whole of the balance of the testator's real and personal estate, without being compelled to give security. The legatees

45

MICHEL
*v.*
BEALE.

named in the will were decreed to be the owners of seven-eighths of the testator's estate, and the heirs at law to be entitled to the one-eighth not disposed of. No appeal having been taken on behalf of either the legatees named in the will or of the heirs at law, and no amendment of the judgment in favor of either having been asked in this Court, we have only to consider whether the plaintiff is entitled to a judgment more favorable to her pretensions than the one which has been rendered below. Her counsel contends that she is entitled to a judgment decreeing to her the ownership of all the estate of her husband, and that at all events she has a right to a decree authorizing her to sell the whole property at private or public sale, and on whatever terms she may think proper.

We may restrict the expressed will of the testator by reputing as not written impossible conditions and conditions contrary to the laws; but we are not at liberty to enlarge the will by giving to the legatee a higher title than the testator intended to give.

In this case, we are unable to gather from the whole instrument, without departing from the proper signification of its terms and from its manifest spirit, that the testator intended to bequeath the immovables to his wife in full ownership. (C. C. 1705.) There is nothing in the will from which it can be inferred that the testator was willing that his wife should have the right of disposing of any part of his estate by gratuitous title except as to the objects specially bequeathed to her, and which was given to her to be disposed of as she might think fit. The right of spending for her private use is not a right of disposing of the property by testament. On pourrait dire peut-être (says Toullier) que toutes les fois quel'acte contient la faculté de disposer suivant la formule " pour en jouir et disposer comme de ses biens propres," le fiduciaire a le pouvoir de tester ; mais cette règle n'a rien de sûr, car dans la rédaction des actes, on ne s'attache point assez scrupuleusement à la propriété des expressions. Toullier, liv. 3, tit. 2. chap. 1st, Donations et Testamens. In the case of *Beaulieu* v. *Ternoir*, 5th An., 476, to which this case has been assimilated, the formula alone mentioned by Toullier, was used. The donee in that case had the full right of ownership conferred on her by the donation. The expressions used in the donation were as follows : "Lui a par ces présentes fait donation entre-vifs et irrévocable, ce qui a été accepté par ladite Eulalie Ducloslange, à ce présente, asssistée de son père naturel ci-dessus dénommé, aussi comparant d'un demi terrain situé au faubourg de la Course, rue des Religieuses, ayant 30 pieds de face sur 120 pieds de profondeur, faisant partie du terrain désigné par le No. 8 et attenant au terrain No. 7, dans l'îlet No. 10, lui appartenant au donateur pour l'avoir acheté du sieur Philip Ducloslange, par acte passé devant le notaire soussigné le 15 avril dernier.

Pour et par le donataire jouir, faire et disposer comme de chose lui appartenant en toute propriété, dès maintenant et à toujours.

A cet effet, le donateur met et subroge la donataire dans tous les droits de propriété qu'il a et peut avoir sur le demi terrain ci-dessus, voulant qu'elle en soit saisie et revêtue.

Cette donation est faite sous la condition expresse sans laquelle ces présentes n'auraient pas eu lieu, que si la donataire venait à décéder sans laisser de postérité, ou sans avoir disposé d'aucune manière dudit demi terrain, qu'alors Agathe Ducloslange, Mélite Ducloslange, Mathilde Ducloslange et Léonide Ducloslange, femmes de couleur et libres, deviendront, sans qu'il soit nécessaire de remplir aucune formalité, propriétaires dudit demi terrain et de tout ce qui sera construit dessus."

The Court in that case very properly held that the condition annexed, that if the donee died without posterity or without having disposed of the property in any manner, that the property should go to others indicated in the act, was not a charge to preserve the property for others—that the condition was a *fidei commissum*, which, although a nullity itself, did not carry with it the nullity of the donation. In the present case it is evident that the testator did not design that his wife should have the disposition by will of his half of the estate. He indicates himself the persons to whom, after her death, his property should go. He emancipates some of his slaves, but provides that the emancipation shall only take effect on the death of his wife. If, instead of declaring as he has done, that he desired his wife to be the usufructuary of his half of the estate, the testator had given it to her in full property, so that she might have disposed of it by will, this legacy "*De eo quod supererit*," in favor of other persons, would have been null, but this title on his death would have vested absolutely in his wife. Under the terms of the will and the evident intention of the testator to confer on his wife a title of usufruct and not one of ownership, the question as to the validity of the legacy to others, need not be enquired into, as it is unimportant except as between the legatees and the heirs at law, and the latter appear to have acquiesced in the judgment declaring the disposition valid. The attorney for the absent heirs, who pleaded the nullity of that clause in the will, as containing a disposition reprobated by law, has taken no appeal, and the judgment of the Court below between the legatees and the heirs at law is not, therefore, subject to revision.

It remains then to be determined, what rights the plaintiff is entitled to as the usufructuary of the half of the property belonging to her husband's estate. The testator undoubtedly did not intend that his wife should be restricted to the usufruct of his property, in the legal sense of the term. He was ignorant of the legal meaning of the term usufruct, and designed that his wife, without having the absolute ownership of his half of the common property should nevertheless enjoy the right of spending for her own private use, whatever she wished. Usufruct is defined to be the right of enjoying a thing the property of which is vested in another. It was contemplated by the testator that the estate would be converted into money. The only usufruct in its legal sense which could have been given to the wife, after the estate was turned into money, was the *imperfect* or *quasi* usufruct, to the existence of which it is essential that the usufructuary should be under the obligation of returning to the owner of the capital on which the usufruct is established, at the period when the usufruct should cease, the full amount of such capital. It is by this equivalent says *Marcadé*, it has been rendered possible, to establish the legal usufruct on all kinds of property, even on those things which are consumed in the enjoyment. The capital he says is not to be confounded with the objects which compose it, "Ce fonds est un bien en partie matériel en partie moral sur lequel l'usufructier a seulement le droit de jouissance, d'exploitations *fructus ;* mais non pas le droit de disposition. Marcadé, 2d vol. p. 451, Tit. 3, Usufruit. In the imperfect usufruct the property of the thing subject to the usufruct is transferred to the usufructuary in the sense that she may consume, sell or dispose of them as he thinks proper, subject, however, to the charges imposed by law, of returning to the person who has the naked owner-ship, the equivalent of the things thus consumed, sold or disposed of. We are bound to give effect to the will of the testator, according to his intentions, so

far as these intentions can be legally carried out. It was his intention that his wife should have the authority to sell the property according to her own wish and as she might see fit, and without being compelled to furnish security. So far as this intention does not conflict with the rights of those in whom by law the naked title to the property is vested, as the effect of the same instrument confers on the wife this authority, it may be lawfully exercised.

The testator had clearly a right to provide that the usufruct of the wife might be established for her greater benefit on the proceeds of the sale of the property, rather than on the property itself. The rights of those who are entitled to the naked ownership, must be in like manner transferred to the proceeds of the sale, subject to the wife's usufruct during life. This usufruct must be one in the legal sense. The capital on which the usufruct is established, will be ascertained when the property is converted into money. Art. 556 of the Code, declares that " Sums of money, the usufruct of which has been given, shall be put out at interest, on good security, with the consent of the owner, and if he refuse, by the authority of the Judge, and the interest of such sums shall belong to the usufructuary. We are of opinion that the plaintiff, under her husband's will has a right to the usufruct of the property itself, if she prefers it. The judgment of the Court below has given her this right and has dispensed her with giving security by virtue of Article 552 of the Code which provides that the security may be dispensed with in favor of the usufructuary by the Act by which the usufruct is established. If, however, the plaintiff prefers that the property should be sold, and her usufruct established on the proceeds of the sale, she has a right to require it, but it would not be consistent with the rights of the heirs and legatees in whom the property is vested, that the plaintiff should have the right of selling at private sale. The sale should be made at public auction to the highest bidder, and after public notices by advertisement.

It is therefore ordered and decreed that the judgment of the Court below be amended, and that the plaintiff, in addition to the right of usufruct allowed to her by the judgment, be decreed to have the right of causing the property subject to her usufruct to be sold, at public auction, on such terms as she may direct, after thirty days advertisement of the sale, in a public newspaper in the parish where the property to be sold is situated, or in case there be no newspaper published in said parish, then in one published in the nearest adjoining parish, and it is further ordered that the judgment of the Court below, thus amended, be affirmed, the costs in both cases to be paid by the succession.

SLIDELL C. J. The interpretation of this will is quite embarrassing. If the granting words had been a little broader, I would have been willing to concur in the conclusion that the testator intended to give his wife the ownership of the real estate, and make a donation over of what should remain undisposed of at her death, as in the Ducloslange case. But the testator uses the word "usufructuary," dispenses with "security," (which is required in case of usufruct without a dispensation by the grantor,) and allows her to spend " pour son usage particuler," what she may think proper; but, as Mr. Justice Ogden suggests, does not seem to have intended she should have the right to give away by donation inter vivos or testament. When we group together the different clauses of the will, we find the language used not so broad and comprehensive as in the Ducloslange donations, as will be seen by comparing in full the deed in that case with the testament in this.

On the whole, I conclude that the decree proposed by Mr. Justice *Ogden* will carry out the intention of the testator as far as it can be lawfully done; and that the testator did not intend to confer a full and complete ownership, which would have involved a right to dispose even by gratuitous title. This view seems also much strengthened by the difference of the language used with regard to the movables, jewels, &c., which, in the same will, he clearly gives her in absolute ownership.

It may be observed that there are no forced heirs in this case to complicate, perhaps, the question of the testator's power; and I am not prepared to say that our law forbids a testator to give the legatee of the usufruct of his estate a right to convert the estate given into money, and take the usufruct of the proceeds. Let it be remarked that the testator feared the management of a plantation might prove embarrassing to a female, and that the power to sell seems to have been dictated by that consideration.

For these reasons, after some hesitancy, I concur in Mr. Justice *Ogden's* conclusions.

BUCHANAN, J., dissenting. The object of this suit is to determine what sort of an estate the plaintiff has, under the will of her deceased husband, in the property left by him at his death. The petition coincides with the last will in declaring that everything possessed by the testator had been acquired during the marriage of himself and the plaintiff; and, consequently, the testator only professes to devise the one-half interest which by law vested in himself as partner in the community of acquets. The disposition which he makes of this half is best expressed in his own words. The first passage of the will which relates to this subject reads as follows: "Désirant témoigner à ma chère et bien aimée épouse Josephine Michel toute ma gratitude, et lui donner des preuves de toute l'estime et amitié que j'ai toujours eu, et que j'aurai tant que je vivrai, pour elle, je la laisse et la prie d'être usufruitière avec pleine et entière jouissance de tous mes biens en général, dont je n'aurai point disposé par ces présentes ou autres avant ma mort; et pendant toute sa vie durante, et pour elle en jouir en paix sans qu'il lui soit donné aucun trouble quelconque par aucune personne; lui donnant autant de droit qu'il est en mon pouvoir de lui donner. Et comme il est presque impossible de faire cultiver l'habitation après ma mort, je l'autorise de la vendre, ainsi que toutes les autres propriétés, esclaves, et autres, suivant son désir et volonté, et qu'il se trouvera convenable, sans qu'il lui soit donné aucun trouble, ni empêchement quelconque, ni sans être obligée ni tenue de donner caution aucune, ayant toute ma confiance pour tout ce qu'elle pourra faire." If this were all that the will contained in reference to the point at issue, it could not be asserted that it contained anything more than an universal constitution of usufruct, (C. C. 577,) with the privilege to the usufructuary of converting the objects of the usufruct into cash, in which case the right of usufruct would attach to the cash. But farther on, we find the testator making use of the following expressions: "Je lègue à ma chère et bien aimée épouse, tout le mobilier, l'argenterie, montres et bijoux pour elle faire et en disposer tout ce qu'elle désirera suivant son bon plaisir; et le restant de tous mes autres biens réels et personnels, je les lègue comme suit après ma mort et celle de ma bien aimée épouse, ou dans le cas où elle n'aurait point dépensé pour son usage particulier la totalité, comme je lui en donne le droit de le faire si elle le désire; mais ce qui lui restera après sa mort je désire que la moitié de tout ce qui lui restera, revienne à mes héretiers que je nommerai ci-après, et de la manière que j'indiquerai

pour chacun et que voici," &c.  In this clause of the will, prolix and ungrammatical as it is, and in its very prolixity and repetition but the more strongly indicating the purpose of its author, we find a tenure of property entirely inconsistent with the fundamental principle of an usufruct; for wherever there is an usufruct in one, there is a naked ownership in another; (C. C. 482, 525;) the union of the qualities of usufructuary and owner in the same person extinguishing the usufruct, as a matter of course. (C. C. 614.)  Now, in the clause under consideration, the testator makes a devise to his nephews and nieces, which shall only take effect at the death of his wife; and he devises to them only such property as his wife shall not have spent.  And he is so far from restricting her in spending the property, that he expressly authorizes his wife to spend the whole of his property if she think fit to do so.

Usufruct, according to the Louisiana Code, is of two kinds: perfect usufruct, which is of things which the usufructuary can enjoy without changing their substance, though their substance may be diminished or deteriorated naturally by time or by the use to which they are applied—as a house, a piece of land, slaves, furniture; and imperfect or quasi-usufruct, which is of things which would be useless to the usufructuary if he did not consume or expend them, or change the substance of them, as money, grain, liquors.  Perfect usufruct does not transfer to the usufructuary the property of things subject to the usufruct; the usufructuary is bound to use them as a prudent administrator would do, to preserve them as much as possible, in order to restore them to the owner as soon as the usufruct terminates.  Imperfect usufruct, on the contrary, transfers to the usufructuary the property of the things subject to the usufruct, so that he may consume, sell, or dispose of them as he thinks proper, subject to certain charges prescribed by law.  C. C., Arts. 526, 527, 528.

This distinction of perfect and imperfect usufruct is not found in the Code Napoleon.  We can therefore derive no assistance on this subject from the French commentators.  But it appears evident from the definition above copied, that the imperfect or quasi-usufruct of the law of Louisiana can only relate to these kind of things which cannot be used beneficially except by consuming or alienating them; and can have no application to lands, houses, slaves, and all those objects of property which may be used for the purpose of producing an income or ministering to our necessities, without the alienation or destruction of their substance.  An usufruct of a plantation, with power of alienation in the usufructuary, is therefore a tenure unknown to the law, which the will of *Michel* could not create, and which this court cannot sanction.

The right of alienation being inconsistent with usufruct of real estate, this clause of the will in which the power of alienation is found, to my mind, creates a higher estate than an usufruct, namely, an ownership.  And this clause being the last in order, supersedes the clause which creates an usufruct.  See Article 1716 of the Civil Code.  The clause last written must be regarded as the true expression of the testator's will, and I find a striking analogy in its dispositions to those of a certain donation *inter-vivos*, which was the subject of two decisions of the former Supreme Court.  In the case of *Ducloslange* v. *Ross*, 3d Annual, 432; and *Beaulieu* v. *Ternoir*, 5th Ann. 476.  One *Baptiste Beaulieu* made a donation *inter-vivos*, of a lot of ground to *Eulalie Ducloslange*, on the condition that, should the donee die without posterity, *and without having disposed of said lot*, the same should belong to the sisters of the donee.  *Eulalie Ducloslange* having died without issue, but having made a sale of the lot to one *Ross* shortly

before her death, her sisters sued *Ross* for the lot, relying upon the condition expressed in the donation, and asserting the sale to have been obtained by duress and fraud. But the court held that the condition of the donation was a *fidei commissum*, and, as such, was null by Art. 1507 of the Code, and conferred no right upon the residuary donees. But when the donor, *Beaulieu*, in a subsequent action, sought to recover possession of the lot from *Eulalie Ducloslange's* vendee, on the ground of nullity of the donation, the court said that true it was the *fidei commissum* contained in the donation was a nullity, but that it did not follow that the donation was null. To have that effect, the act of donation must impose an obligation on the donee of possessing for, or returning to, another the thing which is the object of the donation. In other words, to import the nullity of the whole act, there must not only be a *fidei commissum*, but a substitution. And, as in the donation by *Beaulieu* to *Eulalie Ducloslange*, there was no prohibited substitution, no obligation to preserve the thing donated for the benefit of another party, the donation was held to be valid. In like manner, *Jean Pierre Michel*, in his will constituting his wife his universal legatee, by words that import a full power to take possession of all his property real and personal, and to dispose of it in whole or in part, as she may think proper, has thought fit to name certain other persons as residuary legatees of all that at his wife's death shall remain undisposed of by her. By this form of testamentary disposition, none of *Michel's* property is tied up in the hands of his wife and universal legatee. The case is not, therefore, within the purview of the second paragraph of Article 1507 of the Civil Code, which declares: "Every disposition by which the donee, the heir, or legatee is charged to preserve for, or to return a thing to, a third person, is null, even with regard to the donee, the heir, or the legatee." The disposition is good as to the wife, the universal legatee, but bad as to the residuary or *fidei commissary* legatees.

The legal consequence seems to follow, that the widow of the testator is entitled to be sent into possession as owner of the property devised.

*Lacy*, for a re-hearing:

We do not pretend that the will is entirely free from difficulty, snd we cannot say that no embarrassment is created, in arriving at the true construction of that remarkable instrument. But after weighing, and well weighing, all the circumstances connected with the making of the will, which point to the Madam as owner; being, moreover, utterly unable to reconcile a bequest of " *ce qu'il lui restera après le mort.*" with a recognition of the residuary legatees, as the owners of *Michel's* lands and slaves *now on hand:* and having had our view strengthened and confirmed, by the cogent reasoning of Mr. Justice *Buchanan,* and the peculiarity of the opinion of the Chief Justice, we feel it our duty again to raise the point of ownership, for the consideration of your Honors, and for such final disposition, as the good judgment of the court may suggest. We are confident ourselves of the correctness of the opinion which we entertain; but being satisfied, that we can, in argument, add nothing to what has already been said relative to the 'question of ownership, we are content to leave that point in the hands of the court, without further remark.

We may be wrong in supposing, from the opinion of the court, that an inference might be drawn, that Mrs. *Michel*, as an *imperfect* usufructuary, is compelled to furnish security: arguing however, upon the hypothesis, that such security is intimated by the court, we beg to maintain before your honors.

1st. That as a perfect usufructuary, she is not obliged to give security.

A perfect usufruct, is of things which the usufructuary can enjoy without changing their substance, though their substance may be diminished, or deteriorated, naturally, by time, or by the use to which they are applied; and in case of a perfect usufruct, Article 552, Civil Code, expressly provides, that security may be dispensed with.

Indeed, your honors, in this very suit, have not only held that Madame *Michel*,

in case she enjoys the property as a perfect usufructuary, is relieved from giving bond, but have gone so far, as to affirm the decree of the District Judge, which relieved the plaintiff from so doing.

2d. As an imperfect usufructuary, there is no greater obligation to give security, than in case of perfect use.

In making good this po-ition, we may, we think, successfully use the argument, that the greater includes the less; for it seems to us, that if Madame *Michel* is permitted to use and enjoy the property itself, without giving security ; she ought not, in case she allows her usufruct to attach upon the proceeds of that property, as the will and the opinion of your honors permit, be subjected to more onerous conditions than would be imposed upon her, as a perfect usufructuary. We can readily imagine, that if the deceased had left forced heirs, this court might, with the view of preserving to them their legitime, under Articles 1840-1 1845, Civil Code, compel an imperfect usufructuary to give such security as would secure the forthcoming of the property or monies; but where there are no forced heirs, and consequently no provision of law, directly or indirectly, restricting the condition of an imperfect usufructuary, it is the duty of your honors, under the law, to place the former in the position of one, who in the use of the property itself, has been dispensed from giving security, viz : to grant to him the imperfect use of the property, without any liability to furnish bond.

Your honors, in the opinion delivered by Justice *Ogden*, have intimated, and in the decree have left it to be inferred, that Madame *Michel*, in case of a sale of the land and slaves, and a contemplated usufruct of the proceeds, shall put the money out at interest, *on good security*, with *the consent of the residuary legatees*, &c. : and in that view of the case, we respectfully and conscientiously urge upon the court, there is error.

Have your honors made the intimation complained of by us? Are we correct upon the point of fact? The following quotations, from the opinion of the court, enable us to answer those questions, most emphatically in the affirmative.

" The rights of those who are entitled to the naked ownership, must be in like manner transferred to the proceeds of the sale, subject to the wife's usufruct; *the wife's usufruct must be one in a legal sense.* Article 556, Civil Code, declares, &c."

That your honors, in the opinion complained of by the counsel for Madame *Michel*, have intimated, and under such intimation, have left it to be inferred from the decree, that their client, in case she should assume the position of an imperfect usufructuary, must put out the money at interest on good security, and with the consent of the residuary legatees, cannot be doubted; and we proceed to show the court that there is error in such opinions.

This is evident, because,

1st. Article 556 Civil Code, (under which your honors have made the intimation, that the sums of money, arising from a sale of the testator's real estate and slaves, must be put out at interest, on good security, with the consent of the owner,) is not applicable to a case, in which the usufructuary has been dispensed from giving security.

Art. 556, provides, if the usufructuary does not give security, or a special mortgage, then, in case of a perfect usufruct, 'the immovables and the slaves, subject to the usufruct, shall be hired or leased out at public auction, and in case of an imperfect usufruct, the sums of money, the use of which has been given, shall be put out at interest, on good security, with the consent of the owner, and if he refuse, by the authority of the Judge. The language of this article to us, is clear and unambiguous, and contemplates obtaining the consent of the owner and security from the borrower, *only* in those cases in which the usufructuary is bound by law to give the security or the special mortgage, contemplated by Articles 551 and 555, of the Civil Code ; and has no applicability, where under Article 552, security has been dispensed with, in favor of the usufructuary, *in* the act by which the usufruct is established.

Let us, however, for the sake of argument suppose, that, under ordinary circumstances, Article 556 of the Code, may be applied to the case of an usufructuary, who has been dispensed with giving bond ; the court, nevertheless, erred in intimating that Madame *Michel*, must, in case of becoming an imperfect usufructuary, obtain the consent of the residuary legatees, and require bond from the borrower, with stipulation of interest, &c., because, the testator has expressly relieved his surviving widow from those onerous conditions ; and there is no reason why the wishes of the deceased, should not, in that respect, be carried out.

The last will and testament, authorizes the Madame to sell the plantation slaves, and all other property, according to her own wish, without any let or hindrance. Words, full and comprehensive, and as clearly relieving the surviving widow from obtaining the consent of the residuary legatees, &c., as though the testator had said " it is my wish that Mrs. *Michel* shall not be compelled to put out any sums of money, proceeding from the sale, at interest, or on security; nor shall she be required to obtain the consent of the owner, and if he refuse, the authority of the Judge."

In the words of the will "pour elle en jouir, en paix, sans qu'il lui soit donné aucun trouble quelconque, par aucune personne lui donnant autant de droit, qu'il est en mon pouvoir de lui donner. Et comme il est presque impossible de faire cultiver l'habitation après ma mort je l'autorise à la vendre, ainsi que toutes les autres propriétés, esclaves et autres, suivant son désire et volonté et qu'elle le trouve convenable, sans qu'il lui soit donné aucun trouble ni empêchement quelconque."

As to the intention of the testator, there is no room for doubt; and there being no forced heirs, and no rights to be cared for, acquired outside of the will, we know of no reason, why the wishes of the deceased, should not be carried out.

The will is the compass which must direct courts of justice in seeking the intentions of the testator, and that intention, when discovered, must direct the decision of the court. *Oxly*, et al., v. *Clay*, executor, 7 Rob., 428, Civil Code 1705 ; *Withers* v. *Withers*, 8 L. R. 495.

" It is our duty," says the Supreme Court, "to ascertain the intention of the testator," *Clarke* v. *Preston*, 2 An., p. 581.

SPOFFORD, J. In refusing the application for a re-hearing in this case, we remark that the appellant's counsel has drawn an erroneous inference from some expressions in the opinion of the majority of the court. We did not decide, that, if the plaintiff should avail herself of the right of selling the property for the purpose of establishing her usufruct upon the proceeds, she would be required to give security, or have the money put out at interest, on good security, with the consent of the residuary legatees.

A reference to the decretal part of the judgment, will show that nothing of that kind was deemed necessary by the court.

The application for a re-hearing is refused.