HEIRS OF COLE & *AL.* vs. *COLE'S EXECUTORS.*

APPEAL from the court of probates of the parish and city of New-Orleans.

In cases of doubt whether a will presents a substitution or not, it should be maintained.

When the deceased leaves a father or mother, he or she is forced heir for the one fourth of the estate.— And the child may dispose of three 4ths by last will & testament.

Donations *inter vivos,* cannot be made in the form of one-rous con-tracts.

PORTER, J. delivered the opinion of the court. Two questions are presented on the *mortuaria* in this case. The first arises under the following disposition in the last will and testament of the deceased.

"I leave and bequeath unto my said brother, James Cole, all the residue of the property and effects of which I may die possessed, after the payment of my just debts, for and during his natural life; and at his decease it is my will that the same descend to all his children, share and share alike, without regard to the laws of primogeniture existing in that country (Ireland.)"

"The foregoing disposition of my property

may not be conformable to the laws of the state: nevertheless I make this my last and solemn request, that the residue of my property after the legacies be disposed of in the above manner, inasmuch as my said mother is very old and has already been sufficiently provided for, and that my said brother is a married man, and has a large and helpless family. And in case of the foregoing disposition in favor of my brother being disturbed, then I leave and bequeath unto my said brother James, for him and his children as aforesaid, such part and portion of my estate as by law I may and can."

The court below was of opinion that the legacy was good, except so far as it affected the legitime of the mother, who was a forced heir. The judgment of that tribunal gave the one fourth to the mother, and the balance to the appellee.

The case has been very elaborately argued. The abolishing of substitution and *fidei commissa* appears not to have destroyed the litigation of which they were such a fruitful source under the Roman law. It seems as if we were destined to have as many subtle and perplexing questions about what is, or is not, a

Eastern Dist.
Febr'y 1829.

HEIRS OF
COLE & AL.
vs.
COLE's Ex'rs

Eastern Dist.
Feb'ry, 1829.

HEIRS OF
COLE & AL.
vs.
CCLE's EX'rs substitution, as were formerly presented in re-
lation to the application of the doctrine to par-
ticular cases.    In the present instance how-
ever, the conclusions to which our reflections
have brought us, render it unnecessary to de-
cide, whether the clause in the will which has
been the subject of so much discussion at the
bar, does or does not present a substitution.

   It is necessary to check the power of the ci-
tizen over his property after his decease; for
the strong desire in mankind to perpetuate
their authority over what they have acquired,
would otherwise induce them to place it for a
length of time, and for ever if they could, out
of the reach of alienation.    But notwithstand-
ing the authority of the law to restrain dispo-
sitions of testators contrary to public good,
such is the respect paid to the wishes of the
owner, that we believe it may be safely stated
to be the spirit of the jurisprudence of every
civilized country, to carry into effect his will,
unless it *clearly* violates the prohibition which
the legislature has established.    The source
of this doctrine is found in the heart of every
man, and it promotes under proper limitation
a great purpose of public policy: for one of

the strongest motives to industry and economy; one of the highest excitements to the exercise of those duties which make a valuable citizen, is a conviction that the acquisitions of his frugality and enterprise, will be transmitted as he may direct at his death, to promote the happiness of those who were dear to him in life.

Eastern Dist.
*Feb'y*, 1829.

HEIRS OF
COLE & AL.
*vs.*
COLE's Ex'rs

In all cases of doubt then the testament should be maintained. Thus in France, on provisions the same as ours, it is a well established principle of their jurisprudence never to annul a testamentary disposition unless it necessarily presents a substitution, and cannot be sustained in any other manner. *Toullier, Liv. 3, Tit. 2, Chap. 1, Nos. 44 & 46.*

It is clear to us that the object of the testator, from the whole of the testament, was to give the mass of his property to his brother, and to the children of that brother. After leaving it to him for life, he directs that at his death it shall belong to his children: and apprehensive that such a disposition of his property might be forbidden by law, he declares that in the event of it being so "I leave to my said brother James and his children, such part and portion of my estate, as by law 1 may or can."

Eastern Dist.
*Feb'y*, 1829.

HEIRS OF
COLE & AL.
*vs.*
COLE'S EX'RS

The portion of his estate which by law he might have given to his brother and children, was the remainder left after deducting the *legitime* of the forced heir, the mother; and to that remainder, except so far as parts of it may have been given to others by particular legacies, we think the appellees are entitled.

It might perhaps be made a question, whether the father and children were not to take share and share alike under the will, or whether the father should not take a usufruct for life, with the remainder over to his children. The latter construction would perhaps come nearer satisfying the particular intent of the testator. But this question it is unnecessary we should decide. There is no contest between the father and his children, and it is sufficient for us, and the decision of the case, that by the will they can legally take the portion left to them in any right, to the exclusion of the other collateral relations. *La. code*, 1509.

Error has been alleged in the amount given by the decree of the court of probates, to the forced heir, the mother. By its judgment she was declared to be entitled to the one fourth.

The doubt in relation to the correctness of

that judgment arises from three articles in our code.

The 1481 art. declares: "Donations *inter vivos*, or *mortis causa*, cannot exceed two thirds of the property, if the disposers having no children leave a father, mother, or both."

The 899 article is in the following words: "If any one dies leaving no descendants, but a father and mother, and brothers and sisters, or descendants of these last, the succession is divided into two equal portions; one of which goes to the father and mother, who divide it equally between them, the other to the brothers and sisters, or their descendants, as is prescribed in the following section."

Art. 900. "If the father or mother of the person who had died without issue, has died before him, the portion which would have been inherited by such deceased parent, according to the terms of the preceding article, will go to the brothers and sisters of the deceased, or to their descendants, in the manner directed by the following sections."

The first of these articles impliedly gives to the father and mother, as forced heirs, *one third* of the estate, for it prohibits the child to

Eastern Dist dispose of more than *two thirds*, if either of
*Feb'y,* 1829.
the parents survive him.

HEIRS OF
COLE & AL.       But the third, by positive enactment, only
*vs.*
COLE's Ex'rs gives to the father or mother the one fourth:
the construction therefore just alluded to of the
1487 article, is irreconcileable with the direct
and positive commands of the legislature in
the 899th and 900th.

The 1481st however, contains negative ex-
pressions prohibiting the descendant to give
more than two thirds by donation *inter vivos,*
or *mortis causa*, when he leaves either father
or mother.   As the father or mother can only
take the one fourth, the question is, what be-
comes of the difference between the one third
which the ancestor cannot take, and the one
fourth which he may inherit; are the next in
order of succession forced heirs for the differ-
ence?

We at first thought so, but we have been
estopped from coming to that conclusion, by
the 1482 article, which declares the ascend-
ants and descendants to be forced heirs. With
these contradictions in the express commands
of the legislature, we have been no little per-
plexed what conclusion to come to.   None of
the ordinary rules of interpretation afford us

the least aid in solving the difficulty.  If we
say the descendant can give more than two
thirds when father or mother survives, we vio-
late the 1481 article.  If we decide that he
cannot, we are equally in opposition with the
1482d; and we make the brothers or sisters
forced heirs between the difference which the
parent can take, and that which the descend-
ant may will away.

Eastern Dist.
Feb'ry 1829.

HEIRS OF
COLE & AL.
vs.
COLE'S EX'RS

On reference to the report made to the le-
gislature by the *jurisconsults*, who prepared
the amendments to our late code, we find them
state, that their object in the change was to in-
crease the disposeable portion.  Had the 899th
article stood without that which follows it, the
interpretation would have been easy.  By it,
father and mother take one half.  The con-
struction would have been, that this was their
rights in case there was no will, but that the
testator might abridge it by a disposition *mor-
tis causa.*

But the 900th article, by making the portion
which the parent can take, less than the part
which the testator is prohibited to dispose of
deprives us of all aid from that supposed inten-
tion in the law maker.  We cannot untie the

Eastern Dist knot: we must cut it.  And we believe the in-
*Feb'ry* 1829.
tention of the legislature was to give full and
Heirs of
Cole & al. entire disposition to the owner, of all property
*vs.*
Cole's Ex'rs of which he died possessed, except that part
reserved to the descendants or ascendants;
that the collaterals are not forced heirs when
there is neither father, or mother, and that they
are not so, when either survives.

It is therefore ordered, adjudged and de-
creed, that the judgment of the court of pro-
bates in the appeal taken by the co-heirs of
James Cole be affirmed, with costs.

The next question arises on the claim of
Sarah Lee, a free woman of colour.  The ex-
ecutors resist the payment of a note of the de-
ceased, in her favor, dated the 21st July, 1826,
for $3000, and payable on his return from
Europe.

The defendants denied the consideration,
and the court below being of opinion, that none
had passed between the parties, gave judg-
ment against the petitioner; from which judg-
ment she appealed.

On the trial below, the defendants asked se-
veral witnesses whether the plaintiff was not
the concubine of the deceased.  These ques-

tions were objected to, on the ground that no defence of that kind had been set up in the pleadings. The court admitted the evidence, and we think correctly. When the plaintiff produced witnesses to prove the value of her services in the house of the deceased, it was open to the defendants to shew what the nature of these services were, and in what capacity they were rendered.

On the want of consideration, the evidence has brought our minds to the same conclusion as that to which the judge of probates arrived. We think the notes were not given for value received, but as a disguised donation. A great deal of ingenuity has been displayed in remarking on the evidence, and calculations have been offered, shewing that the plaintiff might have made this money by her industry and care and lent it to the deceased. We could not, within the limits of an opinion, detail all the proof, nor explain the various circumstances which have produced the conviction just expressed.

It has been contended this was a remunatory donation, not subject to the rules which apply to donations strictly such. Admitting the

Eastern Dist.
Feb'ry, 1829.

HEIRS OF
COLE & AL.
*vs.*
COLE's EX'rs

law to be as stated, the donee should prove the value of the services. *Toullier, Liv.* 3. *tit* 2, *chap.* 4, *no.* 186.

Now has this been done? She was the testator's slave in 1818; on the 3d August of that year, she was emancipated. In eight years after, we find her owning seven slaves. If her services were given in the house of the testator during all that time, and for his benefit, we think the money by which seven slaves were acquired, shews that she must have been paid for these services. In addition to this, a legacy of $100 is given her by the will.

The note can be considered in no other light than a attempt to disguise under the form of an onerous contract a liberality to the plaintiff, and is null for want of the formalities prescribed by law for donations *inter vivos.*

It is therefore ordered, adjudged and decreed, that the judgment of the court of probates be affirmed with costs.

*Seghers & Pierce* for the plaintiffs.—*Preston, Smith & Strawbridge* for defendants.