(67 South. 27)

No. 20697.

Succession of REILLY.

(Nov. 30, 1914. Rehearing Denied Jan. 11, 1915.)

*(Syllabus by the Court.)*

1. WILLS ⬤⟞473—CONSTRUCTION—VALIDITY.

Where the language of a testament clearly expresses the intention of the testator to be to invest his legatee with the ownership of the legacy, with the direction to make a designated disposition of it, the direction as to how the legatee, as owner, is to dispose of the legacy, is reputed not written, but it does not affect the validity of the bequest to the legatee.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 992–995; Dec. Dig. ⬤⟞473.]

2. WILLS ⬤⟞473—CONSTRUCTION—VALIDITY.

The following is a valid testamentary disposition, in which the condition, "to be distributed as he sees fit among my people in Ireland and for the further education of Thomas Regan," is, as to the validity of the bequest, reputed not written, viz.: "And the balance of whatever I may die possessed of I give and bequeath unto Bishop Thomas Heslin, to be distributed as he sees fit among my people in Ireland and for the further education of Thomas Regan, hereby instituting Bishop Heslin my sole heir and universal legatee."

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 992–995; Dec. Dig. ⬤⟞473.]

3. PERPETUITIES ⬤⟞4—BEQUESTS—VALIDITY SUBSTITUTION.

The essential elements of the prohibited substitution are that the donee or legatee is charged to keep the property during his lifetime for another person to whom it is to be delivered at the death of the first donee or legatee. Such a disposition is null even with regard to the donee or legatee.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–44; Dec. Dig. ⬤⟞4; Trusts, Cent. Dig. §§ 3, 4.

For other definitions, see Words and Phrases, First and Second Series, Substitution.]

4. PERPETUITIES ⬤⟞6—BEQUESTS—PROHIBITED SUBSTITUTION.

The prohibited substitution is an attempt on the part of a donor or testator to vest the title in his donee or legatee without the right of alienation or testamentary disposition or the capacity to transmit it to his heirs.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–47, 49–53, 56; Dec. Dig. ⬤⟞6.]

5. PERPETUITIES ⬤⟞6—BEQUESTS—PROHIBITED SUBSTITUTION.

The objection to the substitution is that, during the lifetime of the donee or legatee, neither he nor the person designated to acquire the title at the death of the donee or legatee could alienate the property; and the law prohibits keeping property out of commerce indefinitely and complicating the simple tenures by which alone its ownership is permitted.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–47, 49–53, 56; Dec. Dig. ⬤⟞6.]

6. WILLS ⬤⟞473—TRUSTS—PARTIAL INVALIDITY—FIDEI COMMISSUM.

In the fidei commissum, whereby the donee or legatee is invested with the title and directed to convey it to another person or to make a designated disposition of the property, the direction as to the disposition of the property is illegal and is reputed not written, but it does not affect the validity of the bequest to the donee or legatee.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 992–995; Dec. Dig. ⬤⟞473.

For other definitions, see Words and Phrases, First and Second Series, Fidei Commissum.]

7. OBJECTION TO BEQUEST.

The objection, that a bequest to a legatee, with the direction to distribute it as he sees fit among persons of a designated class, violates the provisions of article 1573 of the Civil Code, prohibiting the making of a testament by an agent or commissary, is of no importance, in view of the fact that such a condition either creates a substitution and thereby annuls the entire bequest, or creates only a fidei commissum, in which the condition or direction is reputed not written.

8. WILLS ⬤⟞473—BEQUESTS—VALIDITY.

In so far as an attempt of a testator to confer upon his legatee the authority to select another person as the beneficiary of his legacy contravenes article 1573 of the Civil Code, prohibiting the making of a will through an agent

or commissary, the clause purporting to delegate such authority is an illegal condition, which, by article 1519 of the Civil Code, is reputed not written, and therefore cannot annul the bequest to the legatee.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 992–995; Dec. Dig. ☞473.]

9. PERPETUITIES ☞8 — BEQUESTS—VALIDITY —DELEGATION OF TESTAMENTARY CAPACITY.

It is only in a bequest for a pious use, or to the poor of a community, or to a trustee for a charitable or educational or literary institution existing or to be organized, that a testator's attempt to delegate the authority to his legatee or trustee to select the beneficiary or beneficiaries of his legacy annuls the testamentary disposition; because, in all other cases, the bequest of a legacy to one person to be given by him to another is either a prohibited substitution, which is null even as to the donee or legatee, or it is only a fidei commissum, in which the stipulation in favor of the third person is reputed not written.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 57–66; Dec. Dig. ☞8.]

10. DESCENT AND DISTRIBUTION ☞74 — TITLE AND RIGHTS OF HEIR—"SUCCESSION"— ACQUISITION.

A succession is acquired by an instituted heir or universal legatee, by the operation of law, at the instant of the death of the testator, without the necessity of any legal proceedings or taking of possession.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 227, 228, 237–242, 260–262; Dec. Dig. ☞74; Executors and Administrators, Cent. Dig. §§ 629, 630.]

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

In the matter of the succession of John Reilly. Suit to annul a bequest, by collateral heirs of John Reilly against the brothers and sisters of Bishop Thomas Heslin, deceased, wherein Thomas Regan, executor, was nominally a codefendant. From judgment for plaintiffs decreeing the bequest void, defendants appeal. Reversed and rendered.

Dart, Kernan & Dart, of New Orleans, for appellants Heslin heirs. Frank Wm. Hart, of New Orleans, for appellant Thomas F. Regan, dative testamentary executor. Rice & Montgomery, of New Orleans, for appellees Mrs. John P. Prunty and others. Woodville & Woodville, of New Orleans, for appellees absent heirs.

O'NIELL, J. In the will of John Reilly dated the 10th of April, 1908, after numerous special legacies to his collateral relations in this country, appears the following bequest, viz.:

"And the balance of whatever I may die possessed of I give and bequeath unto Bishop Thomas Heslin, to be distributed as he sees fit among my people in Ireland and for the further education of Thomas Regan, hereby instituting Bishop Heslin my sole heir and universal legatee."

The testator died at his domicile in New Orleans on the 26th of December, 1908, and his will was admitted to probate on the 14th of January, 1909.

Bishop Thomas Heslin died in February, 1911, while the succession of John Reilly was yet under administration by Maurice P. Woulfe as testamentary executor. This executor died in February, 1912. James J. Woulfe was appointed to succeed him as dative testamentary executor of the will of John Reilly, and continued the administration.

This suit to annul the bequest above quoted was filed on the 19th of February, 1913, by the collateral heirs of John Reilly, residing in this country, against the executor and the attorney appointed to represent absent heirs and the tutors of certain minor heirs. James J. Woulfe resigned, and Thomas Regan was appointed to succeed him as dative testamentary executor on the 4th of April, 1913. Thereafter, by supplemental petition of the plaintiffs, Thomas Regan, as testamentary executor, was made defendant in this suit.

In their answer the tutors of the minors, made defendants, admitted all of the material averments of the plaintiffs' petition and joined in the prayer that the above-quoted bequest under a universal title be decreed null.

Thomas Regan answered individually and as executor, denying that the bequest in favor of Bishop Thomas Heslin was null for

any reason, alleging that it was a valid testamentary disposition in favor of Bishop Thomas Heslin as universal legatee, and praying that it be so decreed.

The nearest relations and sole surviving heirs of Bishop Thomas Heslin are his two brothers, Rev. Patrick Heslin and James Heslin, and a sister, Mrs. Maria Heslin Igoe.

James Heslin filed suit on the 19th of November, 1913, against Thomas Regan, executor, and against the sureties on the bond of the former executor, James J. Woulfe, for a final account of the administration of the succession of John Reilly, and for judgment recognizing him to be the owner of a third of the residue of the estate as one of the three heirs of the deceased universal legatee.

By supplemental petition of the plaintiffs in the original suit, the two surviving brothers and the sister of the deceased Bishop Thomas Heslin were made defendants.

In this suit therefore the collateral heirs of John Reilly are the plaintiffs or contestants, and the brothers and sister of the deceased Bishop Thomas Heslin are the defendants. Thomas Regan, executor, is nominally a codefendant. Judgment was rendered in the district court in favor of the plaintiffs, decreeing the bequest null and void; and the defendants have appealed.

The education of Thomas Regan was completed from a special legacy bequeathed to him for that purpose, and he is not claiming the benefit of the stipulation, for his further education, in the bequest to Bishop Thomas Heslin, but, as appellant, he contends that the stipulations in the contested bequest are nothing more than suggestions or recommendations which do not affect the validity of the legacy in favor of Bishop Thomas Heslin as universal legatee.

The contestants allege that the bequest is vague, uncertain, and meaningless; that it contains a substitution and fidei commissum; and that it contravenes article 1573 of the Revised Civil Code, prohibiting testamentary dispositions to be made through the medium or choice of an agent or commissary.

The defense is that the provision in the bequest, "to be distributed as he sees fit among my people in Ireland, and for the further education of Thomas Regan," does not make a substitution, because the legatee is not charged to preserve the property during his lifetime and transmit it to a designated person or persons; that these stipulations in the bequest make it only a fidei commissum, in which the recommendations or stipulations, in favor of the testator's people in Ireland and for the further education of Thomas Regan, are to be regarded as not written, but do not affect the validity of the bequest.

### Opinion.

[1, 2] The only vagueness or uncertainty in the bequest is in the testator's reference to his people in Ireland, in which he does not designate them even as his kinsmen. If this uncertainty renders that stipulation in the bequest meaningless, it is an impossible condition, the legal consequence of which is found in the provision of article 1519 of the Civil Code, that impossible conditions, in a disposition inter vivos or mortis causa, are reputed not written. And if this stipulation violates article 1573 of the Civil Code, abolishing the custom of willing by the interposition of a commissary or attorney in fact, it is an unlawful condition, and article 1519 of the Civil Code also provides that conditions which are contrary to the laws or morals are reputed not written.

Our conclusion, however, is that article 1573 of the Civil Code need not be considered in the determination of the question of validity or invalidity of the bequest in contest. This article is in a section of the Code which treats only of the form or confection of wills, and not of the substance; whereas articles 1519 to 1522, of the Code, treating of prohib-

ited substitutions and fidei commissa, are in another section, dealing with the substance, not the form, of donations inter vivos and mortis causa. There are only four articles in section 1 of chapter 6, Of Dispositions Mortis Causa. Article 1570 provides that a disposition mortis causa shall not be made otherwise than by last will or testament, but that the name given to the instrument or manner of disposing, whether by instituting an heir or naming legatees, and whether an executor be appointed or not, are matters of no importance. Article 1571 is the definition of a testament; 1572 prohibits the making of a testament by two or more persons by one and the same act, either reciprocally or for the benefit of a third person; and article 1573 abolishes the custom of delegating the authority to make a will to an agent or attorney in fact, viz.:

"The custom of willing by testament by the intervention of a commissary or attorney in fact is abolished.

"Thus the institution of heir and all other testamentary dispositions committed to the choice of a third person are null, even should that choice have been limited to a certain number of persons designated by the testator."

This article appeared as number 88 of the "Digest of the Laws in force in the Territory," in the act of March 31, 1808, abrogating the French and Spanish laws. In the Code of 1825 it appeared as article 1566, and it was retained in the revision of 1870 as article 1573, under the brief section treating generally of the forms of testaments. In the French law prevailing here until 1768 when Gov. O'Reilly took actual possession of the colony for Spain, no mention had been made of delegating to an agent or commissary the authority to make a testament. Gov. O'Reilly promptly abolished the French laws; and in the Digest of Laws prepared under his direction, under the section treating of testaments, appeared the provisions reciting that, as it often occurred that persons, unable or unwilling to make their own testaments, de-

sired to authorize others to do so for them, such authority had to be given under certain prescribed formalities and restrictions, etc.

From the history and etymology of article 1573 and from its position in our Civil Code, it seems that the only purpose of embodying this provision in the Digest of 1808 was to leave no doubt of the abolishment of the right or custom of making wills by proxy.

Until the passage of the Act 124 of 1882, permitting donations inter vivos or mortis causa to be made to trustees for educational or charitable or literary institutions, it was never necessary to invoke the provisions of article 88 of the Digest of 1808, 1566 of the Civil Code of 1825, or 1573 of the revision of 1870, to determine the validity or invalidity of a fiduciary bequest. We have not been referred to, nor have we found in our jurisprudence, a case where a will or testamentary disposition was made by proxy or by an agent or commissary or attorney in fact. The only cases in which there was an attempt to enforce or exercise the delegated authority to select a beneficiary of a testamentary disposition were those in which it was attempted under the Act 124 of 1882, for the benefit of a charitable, educational, or literary institution. Except in the case of a gift to a religious, charitable, educational, or literary institution, or for pious uses, or to the poor of a community, a fiduciary bequest to a trustee for the benefit of a third person is prohibited by article 1520 of the Civil Code, whether the testator attempts to designate the beneficiary or to confer upon the trustee the right of selecting him. Therefore a bequest to one person for the benefit of another embodies either a substitution, which annuls the entire bequest, or only a fidei commissum, in which the stipulation pour autrui is reputed not written. In either case, the testator's attempt to confer upon the donee the right to select another

person as the beneficiary of the legacy can have no effect one way or the other.

In the case of Fink v. Fink, 12 La. Ann. 320, the contested bequest of the residue of the testator's estate for the erection of an asylum for the Protestant widows and orphans of New Orleans, concluded with this delegation of authority:

"And I do hereby request and authorize my friend, Diederich Bullerdieck, after my decease, to name and appoint three worthy and responsible persons as trustees, to carry out my said intentions respecting the aforesaid asylum."

Our predecessors, through Mr. Justice Buchanan, decided that the disposition was valid under article 1536 of the Civil Code (article 1549, R. C. C.), as a bequest to the poor of a community, and said of the delegation of authority to select the three administrators or trustees:

"Were we compelled to give an interpretation of this clause of the will, in reference to the object of the proposed appointment of trustees, we would undoubtedly feel bound to understand this disposition in a sense in which it could have effect, if possible, rather than one in which it could have none. C. C. art. 1706. But no interpretation of this disposition is necessary. On its face, it is a delegation by the testator to a third person of the choice of administrators of a portion of the estate; and, as such, by article 1566 of the Code (article 1573, R. C. C.), is a mere nullity, and, under article 1506 (article 1519, R. C. C.), must be considered as not written."

This reasoning and doctrine is applicable to any and every case where there has been no attempt to enforce or exercise the delegated right to select a beneficiary of the will in contest.

In the Succession of Mrs. Honoria Burke Ringrose, 51 La. Ann. 538, 25 South. 387, the clause in the will, which was said to violate article 1573 of the Civil Code, did not contain a testamentary disposition or bequest, but was only a request to the executors, or an expression of the desire of the testatrix, regarding the disposition of the residue of her estate, viz.:

"Now, after these bequests have been made, the remainder of my estate I desire my executors to use for any charitable institution they may select, or think of benefiting, to perpetuate my memory."

In the opinion delivered on application for rehearing, referring to the clause above quoted, we find:

"It was contested upon the grounds: (1) That it was merely a direction to the executors named * * * to use the remainder of the estate for some unknown and indefinite object or person; (2) that same was not a bequest, within the meaning of the law, under which the executors could claim title to the property; (3) that it was meaningless, and in direct contravention of the prohibitory provisions of the law, and must be reputed not written."

The executors of the will were the only defendants. They contended that the clause in contest was a bequest to a charitable institution to be selected by them, and they relied upon the Act No. 124 of 1882, legalizing donations to trustees for charitable, educational, or literary institutions, whether already existing or to be organized by the trustees.

The district court and this court recognized that the clause in contest was not a bequest at all, but was only a suggestion or request to the executors, to use the residue of the estate for some charitable purpose to perpetuate the memory of the testatrix.

It was intimated very plainly in the opinion by Chief Justice Nicholls, and was virtually conceded, that, if the testatrix had instituted her executors as her universal legatees or bequeathed to them the residue of her estate, with the charge to use it for any charitable institution they might select or think of benefiting to perpetuate her memory, the bequest to the executors would have been valid and the charge or direction; to use the legacy for some charitable institution to perpetuate the testatrix's memory, would have been reputed not written. It was stated in the opinion that the executors repudiated the idea that the title of the residue of the es-

tate had been given to them. 51 La. Ann. 544, 25 South. 390. And it was said:

"The testatrix did not designate any one as her residuary legatee, but left the selection of the legatee to the choice of her executors. This she could not validly do."

John Reilly did designate Bishop Thomas Heslin as his residuary legatee, and left it to the legatee to distribute the estate among the testator's people in Ireland as the legatee might see fit, and to further educate Thomas Regan. The delegation of authority to select the ultimate beneficiary or beneficiaries is not all there is in the clause contested in the present suit, nor is there any attempt to enforce or exercise the delegated right of selecting the ultimate beneficiary or beneficiaries, as was the case in the Succession of Mrs. Honoria Burke Ringrose.

This court also regarded article 1573 of the Civil Code inapplicable and not to be considered in deciding the contest of the will of Francois Meunier, 52 La. Ann. 79, 26 South. 776, 48 L. R. A. 77. The testator bequeathed all of his property in the city of New Orleans to his native city, Carouge, in Switzerland; he directed that the property be sold, and that the city of Carouge "shall place the said sum at interest, and with the interest shall endow each year two poor girls, and shall give a pension to ten old persons of both sexes, without any distinction of religion."

The legal heirs of Francois Meunier contested the will, alleging that the bequest was a prohibited substitution, and also that it was an attempt to will the estate to indefinite persons, two poor girls and ten old persons, through the interposition of a commissary or attorney in fact. But the court said:

"This argument would prevail if it were the only interpretation of which the will is susceptible. But there is another view to be taken of the will, and we think a legal one."

It was observed then that the executors had sold the property as directed and the residue of the estate consisted of the proceeds derived, less the debts of the succession; and that therefore the testament could not indefinitely tie up the property and keep it out of commerce, or complicate the simple tenures by which alone our system of laws permits the ownership of property. Hence it was not a substitution.

"The title intended," said the court, "is one to the city of Carouge in full ownership, with a destination to pious or charitable uses. * * * This direction is, we think, more to be regarded as in the nature of a request to the legatee. It was the expression of a wish, a desire. It was not a disposition. It was advice and recommendation. C. C. art. 1713, we think, authorizes this meaning to be given to the words. [State v. McDonogh Ex'rs] 8 La. Ann. 237. * * * The terms of the will are terms of disposal. They express the transfer of ownership from the * * * testator to the legatee. The disposition and control of the fund after it is placed in the city's hands would be in virtue of ownership, not trusteeship."

It was intimated that one reason why the testament of Francois Meunier was not a fidei commissum was that he had not named or designated the individuals who might be the ultimate beneficiaries of his will. Quoting Domat's definition of "fidei commissum," as a disposition mortis causa by which the legatee is directed to give the property to another person, it was said:

"By 'another person' is meant a person or institution so named or indicated as to individualize him or her or it. That is not the case here. This bequest is to the city of Carouge, and to it alone. * * * It was in no sense a legacy to any other person."

There is considerable logic in this, that if the direction to the legatee, to distribute an estate among a class of persons whose individuality is not indicated and to distribute it as the legatee sees fit, violates article 1573 of the Civil Code, because it is an attempt to make a testamentary disposition through an agent, it is simply an illegal condition, which, under article 1519 of the Civil Code, and under the doctrine expressed in Fink v. Fink, must be considered as not written; it can have no effect upon the validity of the

bequest, and no interpretation of it is necessary.

A will containing a clause very similar in its legal (or illegal) aspect to the one in the will of Mrs. Honoria Burke Ringrose was that of Mrs. Alice B. McCloskey, 52 La. Ann. 1122, 27 South. 705. The clause which was pronounced invalid was as follows:

"And my trustees shall hold the residue of moneys forming portion or arising from the sale, calling in, collection or conversion of my American property in trust, to apply such an amount as they shall think fit in the erection of a stained-glass memorial window in St. Patrick's Church, Donegall Street, Belfast, in memory of the late Rev'd Michael Cahill, C. C., formerly of St. Patrick's Church aforesaid, and in trust to pay and apply any surplus of the said such residue for such charitable uses and purposes in Ireland as they in their discretion shall think fit. * * * And in case any of the charitable or other legacies hereinbefore bequeathed, or of which I shall bequeath by any codicil to this my will, shall be or become void at law or shall otherwise lapse or fail to take effect, then I bequeath all such legacies which shall be or become void unto my said trustees absoutely and direct that all such legacies as shall lapse or fail to take effect shall form part of my residuary estate."

Such an indefinite disposition to trustees in trust for indefinite charitable purposes was declared a void legacy, not saved by the provisions of Act 124 of 1882; and, invoking the doctrine prohibiting wills by proxy, it was said:

"It is obvious that this is not a valid disposition by will under our law. The institution of heir or other testamentary disposition committed to the choice of a third person is null by the express language of the law. C. C. art. 1573. * * * The same is, besides, too uncertain and vague to enable any one to take under the terms thereof. The bequest is not to the parties named therein as trustees in their individual capacity, but to them as trustees. It cannot be said with certainty that the testatrix intended the parties named as trustees to take as individuals. It is clearer that she meant for them to take in their capacity as trustees. If the latter was her intention, then must she be considered as vesting her trustees with title to the residuum in order to carry out her thereinbefore mentioned purpose, viz., its application to such charitable uses in Ireland as they might determine. And to this end and in furtherance of this purpose, the concluding words of the clause under consideration contain the direction that the legacies which lapsed or failed to take effect were to form part of her residuary estate. Now, it was this residuary estate, or the proceeds thereof, which was to be applied to charitable uses in Ireland. It was willed to certain persons as trustees who had previously, in the will, been given directions as to how it was expected they were to apply it. It is the same thing as bequeathing it to them in trust for the purpose. It comes within the prohibitions of the law and is void. Had the bequest been made to the parties named as trustees in their individual capacity, a different rule might apply. * * * Here no legatee is named, the amount is left uncertain, and the disposition is to trustees who are directed to apply it to charitable purposes as they in their discretion may think fit."

In John Reilly's Will, the bequest is made, not to a trustee, but to the legatee in his individual capacity, as sole heir and universal legatee; and a different rule must apply. That rule is that the words, "to be distributed as he sees fit among my people in Ireland, and for the further education of Thomas Regan," which the plaintiffs characterize as vague, indefinite, and meaningless, and which, in part, are said to violate article 1573 of the Civil Code, are to be considered as not written, or as mere suggestions or requests addressed to the legatee, not valid or binding in law, nor of any legal effect upon the bequest to the universal legatee. This is the rule which the court said might have applied to the will of Mrs. McCloskey, "had the bequest been made to the parties named as trustees in their individual capacity."

The residuary bequest in contest in the Succession of Villa, 132 La. 714, 61 South. 765, was declared valid because a majority of the judges of this court construed the bequest to be, not to Dr. Barr, but to the Presbyterian Church of New Orleans, and therefore a gift to a pious use.

The bequest was in these words:

"The balance of my estate to be given to Rev. J. C. Barr of the Presbyterian Church, in New Orleans, to be used for the benefit of said church and any other good work Dr. Barr may see fit to use it for."

Invoking the prohibition in article 1573 of the Civil Code, the court held that the expression, "and for any other good work Dr. Barr may see fit to use it for," was an attempt to make a bequest through an agent or commissary, was therefore invalid, and was to be considered not written.

Counsel for the contestants in the present case say, in their brief, that, as the court did not hold "that whatever amount might have gone to 'any other good work Dr. Barr might see fit to use it for,' should be given to Dr. Barr as legatee," the court should not now strike out "the clause in regard to the distribution among the relations in Ireland," without annulling the main part of the bequest, viz.:

"And the balance of whatever I may die possessed of, I give and bequeath to Bishop Thomas Heslin, * * * hereby instituting Bishop Heslin my sole heir and universal legatee."

The reasoning in the decision in the Succession of Villa leaves no doubt that, if the testator had said, "And the balance of whatever I may die possessed of, I give and bequeath to Rev. J. C. Barr, to be used for any good work he may see fit to use it for, hereby instituting Rev. J. C. Barr my sole heir and universal legatee," so as to embrace all that is claimed to be valid in the will of John Reilly and all that was found invalid in the will of Raphael G. Villa, the invalid portion would not have affected the validity of the bequest to Rev. J. C. Barr as the instituted sole heir and universal legatee.

But Mr. Villa did not use such an expression as "I give and bequeath to Rev. J. C. Barr * * * instituting him my sole heir and universal legatee." He said, "The balance of my estate to be given to Rev. J. C. Barr of the Presbyterian Church," etc. And the decision turned entirely on the construction and conclusion of the majority of the judges of this court that the bequest was made, not to Rev. J. C. Barr, but to the Pres-byterian Church; and, applying the doctrine of accretion, it was said:

"The legacies to the Presbyterian Church in New Orleans and to 'any other good work Dr. Barr may see fit to use it for,' being made conjointly (Civil Code, art. 1707), and the latter legacy being null, accretion takes place for the benefit of the other legatee—the Presbyterian Church in New Orleans."

What the result and decision would have been if the valid portion of the bequest had been made to Rev. J. C. Barr may be inferred from the court's recognition of this doctrine (132 La. 718, 61 South. 767), viz.:

"It is only so far as a condition, charge, or mere right, might be impossible or contrary to law, that said charge or condition would be considered as not written. If it is compound, and legally possible in one part and impossible in another, this latter part only will be rejected, but what is possible must stand good as a legal volition legally expressed."

To apply the above formula to the testament of John Reilly would put an end to the present contest and relieve us of the necessity of making an examination and comparison of the many other cases to which we have been referred.

However, in addition to the above-mentioned five decisions in which this court referred to the abolishment, by article 1573 of the Civil Code, of the right or custom of making wills by proxy, in the cases of Fink v. Fink, Successions of Burke, of Meunier, of McCloskey, and of Villa, counsel for the plaintiffs have also cited the decisions on the subject of prohibited substitutions and fidei commissa in the following cases: Succession of Franklin, 7 La. Ann. 395; Succession of McCan, 48 La. Ann. 150, 19 South. 220; Succession of Kernan, 52 La. Ann. 48, 26 South. 749; and Dufour v. Deresheid, 110 La. 344, 34 South. 469.

[3-5] In more than a century of jurisprudence on the subject of substitutions and fidei commissa, prohibited by article 1520 of the Civil Code, the distinction between them

and the difference in their effect has been consistently observed. The essential elements of the prohibited substitution are that the immediate donee is obliged to keep the title of the legacy inalienable during his lifetime, to be transmitted at his death to a third person designated by the original donor or testator. Such a disposition is null even with regard to the original donee or legatee. In the fidei commissum, whereby the donee or legatee is invested with the title and charged or directed to convey it to another person or to make a particular disposition of it, only the charge or direction, as to the ultimate disposition of the donation or legacy, is null and is to be considered not written, leaving the donation or bequest valid as to the donee or legatee. A substitution is an attempt on the part of the donor or testator to make a testament for his donee or legatee along with his own will, and to substitute his own will for the legal order of succession from his donee or legatee. If permitted, the effect of a substitution would be to tie up the title and keep it out of commerce during the lifetime of the first donee, during which time neither he nor the person designated to receive the title at the donee's death could alienate it. A substitution is necessarily a fidei commissum, but a fidei commissum is not necessarily a substitution. In the fidei commissum the title is not tied up or kept out of commerce; the direction or charge, as to its disposition, is to be regarded only as a precatory suggestion addressed to the conscience of the donee or legatee, which, being illegal, but harmless, can have no binding effect, and may be legally regarded as not written.

[6-10] Having these fundamental principles established, we have only to construe the language in the testament and decide whether it is a substitution or only a fidei commissum.

This test was given by Mr. Justice Rost as the organ of the court in the earliest case to which we have been referred by the plaintiffs' counsel (Succession of Franklin, 7 La. Ann. 414), viz.:

"When the words of the testamentary disposition are sufficient to vest a legal title in the legatee, and the intention of the testator to create such a title for his benefit, to the exclusion of the heirs at law, and of all other persons, is ascertained, then, in furtherance of that intention, any impossible or illegal condition the disposition may contain is presumed to have been inserted inadvertently and is reputed, in law, not written; but where the title created by the will, as ascertained by the words used and the intention of the testator, is a tenure of property which our laws do not recognize, the attempt to change the nature of it and to convert it into a title valid under our laws would no longer be an interpretation of the will, but the making of a new will for the testator.
*    *    *

"I put this case upon the principle that, when the condition is of the essence of the title created by the bequest, and intended by the testator, so that the title cannot stand without it, if that title be one which the law does not recognize, courts of justice cannot replace it by another, and the disposition must fall."

In the Succession of Franklin, however, the bequest was made in trust, with the expressed intention of taking the property out of commerce and creating a common-law trust estate. The contention of the defendants was —and it was the only hypothesis on which the testament could have been held valid— that the words "in trust" should be reputed not written.

Paraphrasing the rule laid down in the Franklin Case, the words of the testament of John Reilly are sufficient to vest a legal title in the legatee; and the intention of the testator to create such a title in the legatee— with the direction to distribute the estate as he might see fit among the testator's people in Ireland, and also to use it for the further education of Thomas Regan—can only be ascertained from the plain language of the testator. He did not use the words "in trust," nor others of that meaning, but said, in so many words, I give and bequeath the residue of my estate to Bishop Thomas Hes-

lin, and I institute him my sole heir and universal legatee, and, having invested him with an absolute title, I direct that he shall use the estate for certain purposes, which direction, being regarded in law as not written, is to be carried out only as my legatee sees fit. The title thus conveyed to the legatee was "to the exclusion of the heirs at law, and of all other persons," except such other persons designated as the testator's people in Ireland, among whom the estate was to be distributed as the legatee saw fit. But even the testator's people in Ireland were excluded from any legal interest in the bequest, not only because the stipulation in their favor is vague and indefinite, but because the distribution among them was to be made only as the legatee should see fit; hence no one could sue to enforce it. It is presumed that the testator knew the law, or acted on legal advice, and knew that the conditions which he imposed upon his universal legatee would be reputed not written. And this legal presumption of the testator's knowledge of the consequence of what he was doing is strengthened into a presumption of fact by his use of the phrase "as he sees fit." Therefore it would only be in furtherance of the testator's intention, and would not be making a new will for him, to regard the illegal conditions in this will as if they had not been written, and carry out the testator's intention—expressed and repeated—to institute Bishop Thomas Heslin his sole heir and universal legatee. The conditions are not of the essence of the title conveyed before—and repeated after—the conditions, and the title can stand without them. There is nothing in the testament to indicate that it was the testator's intention that, if the conditions should be regarded as not written, the bequest to his instituted sole heir and universal legatee should also be regarded as not written. And that is not the legal consequence, unless the testamentary disposition can be construed as a prohibited substitution—not merely a fidei commission.

In the Succession of Mrs. McCan, 48 La. Ann. 145, 19 South. 220, the testamentary disposition, which was decreed null because it was a prohibited substitution, bears no similarity whatever to the testamentary disposition which we are now considering. There, the testatrix bequeathed her entire estate to her five grandchildren, conditioned upon their attaining the age of majority and providing that, if any of them should die before attaining the age of majority, then the portion given to him or her should go to the survivors, with the same condition that they should attain the age of majority. The express purpose was to prevent the mother and stepfather of the children from having the administration of their estate; and, as the legatees were the legal heirs of the testatrix, the only effect of the will, if it had been valid, would have been to tie up the estate and render it inalienable during the minority of the youngest of the legatees and to substitute the will of the testatrix for the law of inheritance from her grandchildren. Finding this a genuine substitution, the court said:

"By such will against the text and spirit of our law, ownership, with its attributes of possession, enjoyment and power to sell * * * is suspended indefinitely, i. e., until the youngest child becomes of age; for the same period the property is stamped with inalienability and put out of commerce, and besides the testatrix undertakes to designate the heirs of those of the legatees who may die after her, while under the law her testamentary power is exhausted when the testatrix designates the heir living at her death."

The will of John Reilly has none of the features that stamped the will of Mrs. McCan as a prohibited substitution.

In the Succession of Kernan, 52 La. Ann. 48, 26 South. 749, a legacy similar to the one held valid in the Succession of Villa was declared invalid. It was obviously a gift to pious uses and was given in the manner

sanctioned by the Act No. 124 of 1882, except perhaps that it was attempted to make the property inalienable, viz.:

"I give, devise, and bequeath to His Grace, Archbishop Janssens, now of this, the diocese of Louisiana, and to His Grace's successors, in fee and forever, all my right and interest in and to the following properties in this city, * * * all of which last mentioned properties, I, as aforesaid, give, devise and bequeath in fee and forever to His Grace, the said Archbishop Janssens, and to his successors, upon condition that out of the revenues or rents thereof an asylum or home for the poor of both sexes shall be founded, endowed, and maintained, similar, so far as possible, to that of St. Michael's, in * * * Rome, Italy."

In the opinion, pronouncing the bequest invalid, no reference at all is made to the Act 124 of 1882, which had been passed eight years before the decision was rendered; and the statute seems so applicable to the case that we are constrained to believe it was overlooked by the court. Without observing that the bequest was, as authorized by the statute of 1882, a bequest to a charitable institution to be organized, the court concluded by saying:

"If in this case we could perceive there was any intention on the part of the testator to vest ownership, in the sense of the law, in the archbishop or the church, our decree would give to one or the other the property in absolute ownership, and repute the condition not written."

The conditions in Mr. Kernan's will were, obviously and from their very nature, more of the essence of the title intended to be conveyed than are the conditions in Mr. Reilly's will; nor did Mr. Kernan leave Archbishop Janssens any such discretion as to how to use the legacy, as Mr. Reilly gave Bishop Heslin, to distribute it "as he sees fit." Yet this court would have given the Kernan estate to Archbishop Janssens in absolute ownership, and would have regarded the conditions as not written, if it could have been perceived that the testator's intention was to put the title in the archbishop, subject to the conditions. It can be perceiv-

ed that it was the intention of John Reilly to put the title in Bishop Thomas Heslin, subject to the conditions imposed, because the testator expressed that intention at the outset, by saying, "and the balance of whatever I may die possessed of, I give and bequeath to Bishop Thomas Heslin"; and, after imposing the condition which the law reputes not written, "to be distributed as he sees fit among my people in Ireland and for the further education of Thomas Regan," the testator concluded by repeating his determination, "hereby instituting Bishop Heslin my sole heir and universal legatee."

The decision in the case of Dufour v. Deresheid, 110 La. 344, 34 South. 469, to which the plaintiffs' counsel have referred us, is entirely favorable to the defense of this will. The testamentary dispositions and the conclusions of the court are stated completely in the syllabus, viz.:

"After declaring that he had brought in marriage, $6,500, the testator, asserting that he had neither ascendants nor descendants, instituted his wife universal legatee and bequeathed to her * * * all of his property. Then he declared it to be his desire that at the death of his wife what remained of his estate * * * should be divided equally between his relative heirs and hers, first deducting from such remainder a sum equal to what he had brought in marriage, * * * which sum should be paid to his natural heirs." Held, "not a disposition by which the legatee is charged to preserve for and return a thing to a third person or persons. * * *

"But if it be conceded that the clause referring to his natural heirs and hers be a fidei commissum, the only consequence would be the words importing the same must be reputed not written. * * * It is only in cases of substitution that the entire disposition of a will is null. In cases of fidei commissa, pure and simple, that clause alone creating the fidei commissum is null, * * * leaving unaffected the validity of the disposing clause or main donation."

In support of the last-mentioned doctrine, the court cited Beaulieu v. Ternoir, 5 La. Ann. 476; Michel v. Beale, 10 La. Ann. 352; Jacob v. Macon, 20 La. Ann. 162; Succession of Beauregard, 49 La. Ann. 1176, 22 South. 348; Succession of Hudson, 19 La. Ann. 79.

And to them may be added: McCluskey v. Webb, 4 Rob. 201; Barnes v. Gaines, 5 Rob. 314; the McDonogh Will Cases, 8 La. Ann. 171; McDonogh v. Murdoch, 15 How. 367, 14 L. Ed. 732; Society for the Relief of Destitute Orphan Boys v. City of New Orleans, 12 La. Ann. 62; In re Billis' Will, 122 La. 539, 47 South. 884, 129 Am. St. Rep. 355; Steeg v. Leopold Weil Bldg. & Imp. Co., 126 La. 101, 52 South. 232; Brewer v. Y. & M. V. R. R. Co., 128 La. 544, 54 South. 987; and Succession of Villa, 132 La. 714, 61 South. 765.

The subsequent death of Bishop Thomas Heslin has had no effect upon the transmission of the estate of John Reilly to his instituted sole heir and universal legatee at the testator's death. A succession is acquired by the instituted heir or universal legatee (though not by particular legatees) at the instant of the death of the testator, by the mere operation of law, and before the instituted heir or universal legatee takes any step to put himself into possession. R. C. C. arts. 940, 941, 942, 943, 944, 945. As was said in the Succession of McCan, 48 La. Ann. 160, 19 South. 220, it is the principle of our Code that the title in full ownership passes from the testator to the instituted heir or universal legatee living, at the last gasp of the testator.

We are not to be misled from the application of the law by a fear that the wishes of John Reilly may not be carried out since the death of Bishop Thomas Heslin. The conditions which were imposed upon him cannot be less binding upon his heirs than they were upon him, as to whom the conditions were no more binding and had no more legal effect than if they had not been written. Nor can any anxiety as to who may or may not be benefited by our maintaining the disposing clause of this will, as if the conditions had not been written, prompt us to

destroy it, unless the law plainly directs that it must be destroyed.

"In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament." R. C. C. art. 1712.

"A disposition must be understood in the sense in which it can have effect, rather than that in which it can have none." R. C. C. art. 1713.

Among many precedents for recognizing the validity of such a testamentary disposition as we have here, the most similar case, perhaps, is that of McCluskey v. Webb, 4 Rob. 201, the syllabus of which reads:

"A bequest of whatever may remain after the payment of debts to a sister of the testator, for the purpose of educating her children, and subsisting her and them, with power to her to make such other disposition of the property to their use and benefit as circumstances may require, and providing that his brother shall participate in such property, to a certain extent, should he consider himself in equal need with his sister's family, is not a substitution or a fidei commissum. The testator does not leave the property to his sister to preserve it for, and surrender it at any time to, her children. She has the entire control of it, to maintain herself and children, to educate them, and to do whatever she may think their interest requires. She may expend it all for such purposes."

To hold that the disposing clauses of this will are null, because the conditions imposed are not legal, would compel us to overrule a doctrine that has been recognized in our jurisprudence for more than a hundred years—that, in a fidei commissum pure and simple, illegal conditions are reputed not written—but they do not affect the validity of a testamentary disposition that would be a complete bequest without the conditions. This doctrine is founded upon a very trite maxim by which the testator is presumed to have known or to have been advised of the effect of putting illegal conditions in his testamentary disposition.

For the reasons assigned, the judgment appealed from is annulled and reversed, and it is now ordered, adjudged, and decreed

that the bequest in the last will and testament of the late John Reilly, whereby Bishop Thomas Heslin was instituted sole heir and universal legatee, is a valid testamentary disposition, entitling the defendants, as heirs of the deceased Bishop Thomas Heslin, to the possession of the residue of the estate of the deceased John Reilly; the plaintiffs are to pay the costs of this suit in both courts.