263 So.2d 739 (1972)
Succession of George Sumney DINWIDDIE.
No. 4999.
Court of Appeal of Louisiana, Fourth Circuit.
May 16, 1972.
*740 Milling, Saal, Benson, Woodward & Hillyer, Lawrence K. Benson, Jr., New Orleans, for plaintiff-appellant, Ainslie Dinwiddie.
Sidney L. Shushan, William M. Barnett, New Orleans, for defendants-appellees, Canal Street Presbyterian Church and United Fund for The Greater New Orleans Area.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Thomas G. Rapier, Lucius F. Suthon, and Edward F. Martin, New Orleans, for defendants-appellees, Robert W. Elasasser, Mrs. Ruth Larsen Dinwiddie, Louis J. Darrah, and J. Mort Walker, Jr.
Before SAMUEL, LEMMON and GULOTTA, JJ.
GULOTTA, Judge.
This is an appeal from a summary judgment rejecting a petition to annul an olographic will on the ground that it contained a prohibited substitution. George S. Dinwiddie died on July 11, 1968, survived by his second wife, Ruth Dinwiddie, and by his two children, Ainslie and Bruce, born of a prior marriage. The decedent left a will in olographic form dated October 5, 1962, which was probated in Civil District Court on August 1, 1968. The decedent's daughter, Ainslie Dinwiddie, petitioned the court to annul the probate on the ground that the will contained prohibited substitutions. A partial summary judgment filed by defendants[1] was granted, thereby having the effect *741 of decreeing that the will[2] did not contain a prohibited substitution.
The narrow issue before us is whether the bequest in favor of Ruth Dinwiddie's heirs is a prohibited substitution.
The law is clear that in interpreting wills, the intention of the testator is paramount. LSA-C.C. art. 1712 provides:
"In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament" (emphasis ours)
Therefore, the testator's intention is his will, and the intention must be enforced as far as it can be done legally. See: Succession of McCarron, 247 La. 419, 172 So.2d 63 (1965); Succession of Fertel, 208 La. 614, 23 So.2d 234 (1945).
The position of Louisiana Courts has been to construe wills in a sense which gives them effect rather than render them invalid. An interpretation which will save the decedent from intestacy should be adopted. Succession of Kamlade, 232 La. 275, 94 So.2d 257 (1957); Succession of Mulqueeny, 248 La. 659, 181 So.2d 384, 387 (1966). This position is consistent with the Civil Code which states unequivocally in art. 1713:
"A disposition must be understood in the sense in which it can have effect, rather than that in which it can have none." (emphasis ours)
In reference to the rules laid down by LSA-C.C. arts. 1712 and 1713, the court in Succession of Fertel, supra, at page 238 explained the strict application of these rules in interpreting wills:
"These rules have been strictly adhered to by this Court in numerous cases involving the interpretation of wills. Typical of these cases is the Succession of McBurney, 165 La. 357, 115 So. 618, holding that the first and cardinal rule among the general rules for the interpretation of wills is that the intention of the testator must be ascertained, and all other rules are only means to that end. And Succession of Wilcox, 165 La. 803, 116 So. 192, holding that the only function of the Court is to determine and carry out the intention of the testator if it can be ascertained from the language of the will.

"It is evident from a reading of the will that it was written by the testatrix without the aid of counsel. The law is indulgent *742 in all such cases. It exempts language from technical restraint and obeys the clear intention however informally conveyed. If obscured by conflicting expressions, it seeks the intention in a purpose, consistent and rational, rather than the reverse; and, of two interpretations, it selects that which saves from total intestacy. The testator's intention is his will. This is the first rule of interpretation, to which all others are reduced. The intention must be enforced as far as it can be done legally. Succession of Blakemore, 43 La.Ann. 845, 9 So. 496.

"When a will is executed, a reasonable and natural presumption is that the testator intends to dispose of his entire estate. There is no presumption that he intends to die intestate as to any part of his estate when the language he uses will clearly carry the whole." (emphasis ours)
A complete reading of the testator's will reveals a consistent series of bequests which should be construed in their entirety.[3] In the paragraph marked I, the decedent bequeathed $31,500.00 to two separate charities out of the disposable portion of his share of the community. In the paragraph marked II, the decedent bequeathed the "remainder" of the disposable portion of his half of the community to Ruth Dinwiddie, his wife, and the usufruct for life of his half of the community, and in paragraph III, he bequeathed to Ruth all of the disposable portion of his separate property, as well as the usufruct subject to a trust. The paragraph marked IV states that on her (Ruth's) death, all of decedent's disposable portion (both community and separate) shall be paid to her heirs. It becomes apparent that Mr. Dinwiddie was referring to "all" of the remainder of his disposable portion in paragraph IV, having at the beginning of his will made specific legacies to two charities. Thus, beginning with paragraph II, the decedent was dealing with his "remaining estate", in that he was no longer referring to the amount previously bequeathed to the charities. The reference to "all" the disposable portion of George Dinwiddie's share of the community should be construed as referring only to the portion of the disposable portion bequeathed to Ruth. Accordingly, the disposition to Ruth's heirs refers only to property bequeathed to Ruth.
Appellant attacks specifically the disposition to Ruth's heirs, paragraph IV as a prohibited substitution. LSA-C.C. 1520 defines substitutions:
"Substitutions are and remain prohibited, except as permitted by the laws relating to trusts.
"Every disposition not in trust by which the donee, the heir, or legatee is charged to preserve for and to return a thing to a third person is null, even with regard to the donee, the instituted heir or the legatee."
In Succession of Reilly, 136 La. 347, 363, 67 So. 27, 32, (1915), the Supreme Court said:
"* * * The essential elements of the prohibited substitution are that the immediate donee is obliged to keep the title of the legacy inalienable during his lifetime, to be transmitted at his death to a third person designated by the original donor or testator." (emphasis ours)
The prohibited substitution was further described in Marshall v. Pearce, 34 La.Ann. 557 (1882):
"The simplest test of the substitution prohibited by our law, is that it vests the property in one person, at the death of the donor, (in case of testaments) and, at the death of such person, vests the same property in another person, who takes the same directly from the testator, but by a title which only springs into existence on the death of the first donee." (emphasis ours) We note the language in Succession of Feitel, 176 La. 543, 146 So. 145, 146 (1933):
"* * * Our predecessors held long ago that, `Substitution and fidei commissa are *743 never presumed; they must be expressed, or clearly result from the sense and signification of the words used in the instrument, which contains them.' (Arnaud v. Tarbe, 4 La. 502), and `unless the will necessarily presents a substitution, and can be understood in no other manner, the disposition will be sustained' (Succession of Ducloslange, 4 Rob. 409), and `in cases of doubt whether a will presents a substitution or not, it should be maintained' (Cole's Heirs v. Cole's Ex'rs, 7 Mart. (N.S.) 414) * * *"
In view of the Feitel case and the direction our courts have taken in upholding wills whenever possible, when it is doubtful whether a will contains a prohibited substitution, the validity of the will should be sustained.
Unquestionably, the provision before us is unusual; however, it does not present a prohibited substitution. A substitution is recognized by (1) inalienability of the legacy while held by the instituted heir (Ruth), and (2) an obligation of the named legatee to return the legacy at a future time to a named substitute designated by the testator. See: Succession of Simms, 250 La. 177, 195 So.2d 114, 132 (1965); Succession of Reilly, supra; Succession of Rougon, 223 La. 103, 65 So.2d 104, 107 (1953). In the bequest being challenged, there appears to be an attempt to restrict the alienation of the property during Ruth's lifetime and preserve it for Ruth's heirs. However, who are Ruth's heirs? By use of the word "heirs", the decedent has failed to name a substituted legatee or third person.
"Heirs" is a general term which encompasses intestate heirs as well as testamentary legatees. LSA-C.C. art. 884 provides:
"The person who has become the universal successor of the deceased, is possessed of all his property and rights, and who is subject to the charges for which the estate is responsible, is called the heir, no matter whether he be such by law, by the institution of a testament or otherwise." (emphasis ours)
LSA-C.C. art. 879 indicates there are three kinds of heirs:
"There are three kinds of heirs which correspond with the three species of successions described in the preceding articles, to wit:
Testamentary or instituted heirs;
Legal heirs or heirs of the blood; and
Irregular heirs."
The bequest to Ruth and on her death to her heirs permits Ruth the choice to will the property to whomever she pleases. Mr. Dinwiddie did not designate a named party. Absent this designation of a named substitute legatee for Ruth, we do not find a prohibited substitution.
In view of the foregoing, the motion for summary judgment granted by the trial judge is affirmed. The matter is remanded to the trial court for further proceedings consistent with the foregoing.
Affirmed.
 APPENDIX
 (Copy of purported Will of
 George S. Dinwiddie)
 "October 5, 1962
"I, George S. Dinwiddie, do hereby make this my last will and testament, hereby revoking all previous wills made by me.
"First, I commit my spirit to God, through his Son, Jesus Christ, the living Lord of my life and my Redeemer. My life has never been the same since he confronted me and I accepted him, and I commend him to all who would have eternal joy and peace.
"I have been married twice; first to Augusta Benners Dinwiddie from whom I was divorced on June 21, 1957; second to Ruth Larsen Dinwiddie to whom I was married on March 15, 1958 and with whom I am presently living and residing I have *744 two children born of the first marriage to Augusta Benners Dinwiddie; namely: Bruce Wayland Dinwiddie; and Augusta Ainslie Dinwiddie Snellings.
"My property consists of separate property remaining as a result of the partial liquidation of the community previously existing between me and Augusta Benners Dinwiddie; and my half of the community between me and my wife Ruth Larsen Dinwiddie.
 "Out of my disposable portion
 of my half of the community property
 existing between me and Ruth
 Larsen Dinwiddie; I bequeath the
 sum of twenty-five thousand dollars
 ($25,000.00) to the Canal Presbysterian
 Church of New Orleans
 I. Louisiana; and the sum of sixtyfive
 hundred dollars ($6,500.00)
 to the United Fund for the Greater
 New Orleans Area to establish a
 `New Orleans Public Service, Inc.
 Endowment Fund,' income from
 which shall be used only for emergencies
 as determined by the governing
 body of said United Fund.
 "I hereby bequeath to my wife
 Ruth Larsen Dinwiddie the remainder
 of all my disposable portion
 of my half of the community
 property existing between me and
 II. Ruth Larsen Dinwiddie and give
 her the usufruct of all of my onehalf
 of said community as long as
 she lives. I hereby appoint her as
 tutor of my minor son Bruce to
 serve without bond.
 "I hereby bequeath to my wife
 Ruth Larsen Dinwiddie; subject
 to the trust hereafter created, all
 of my disposable portion of my
 III. separate property and hereby give
 her the usufruct of all of my separate
 property, subject to the trust
 hereafter created, as long as she
 lives.
"I hereby give and bequeath to Louis J. Darrah and J. Mort Walker, Jr. or either of them as trustees in trust for Ruth Larsen Dinwiddie all of my separate property subject to the disposition of my disposable portion of my separate property and the usufruct of all my separate property hereabove provided for.
"The property I hereby give in trust to said trustees consists of cash, which is deposited in the Hibernia National Bank in the name of `G. S. DinwiddieSpecial Account,' and oil (and gas) interest and royalties standing in my name and jointly owned by me and my former wife Augusta Benners Dinwiddie.
"Said trust shall continue for a period of ten years from my death. Either of said trustees shall have the power to act without the other and in the event of the death of one of said trustees the survivor is hereby given the power to appoint a successor trustee and said successor trustees shall likewise have the power of appointment of future trustees.
"I grant unto the trustees all powers of administering and operating said oil properties including but not limited to the following powers:
"(1) The trustee(s) shall have all the powers that can be conferred upon trustees under Louisiana Revised Statutes, 9:1791 to 9:2212 as now existing or hereafter amended, and shall not be required to furnish bond;
"(2) The trustee(s) shall have the power to sell, lease, pledge or mortgage all or any portion of the trust estate, borrow money on the credit of the trust estate, invest and reinvest the trust funds as said trustee(s) in their sole discretion see fit, irrespective of whether the investments or reinvestments are those required by the law of the State of Louisiana for trust funds or not.
"Said trustees shall distribute to my wife Ruth Larsen Dinwiddie as usufruct onehalf of all the net proceeds from said oil *745 properties periodically as the same shall become available, after deduction of a reserve which in their discretion is necessary to provide funds to pay operating costs, including workover, new drilling and other costs necessary to preserve or administer the trust estate; the other one-half of said net proceeds shall be paid to my former wife Augusta Benners Dinwiddie in the same manner as aforesaid.
"In the event of the death of my wife, Ruth Larsen Dinwiddie prior to the termination of the trust, her share of the trust estate properties representing her usufruct shall be paid to my children, Bruce Wayland Dinwiddie and Augusta Ainslie Dinwiddie Snellings in equal shares. At the termination of the trust that part of the trust property representing their legitime shall be payable to my two children in equal shares; in all cases, however, should my wife Ruth Larsen Dinwiddie be still living, all of my property both separate and community shall continue to be subject to
the usufruct in her favor. On her death
 all of the property representing my
IV. disposable portion (both community
 and separate) shall be paid to
 her heirs.
"In the event my wife Ruth Larsen Dinwiddie should predecease me, then I leave all I die possessed of to my two children, Bruce Wayland Dinwiddie and Augusta Ainslie Dinwiddie Snellings, provided however, that my separate property shall be subject to the trust hereinabove established; in such event I appoint Emily Dinwiddie Halley as tutor of my minor son Bruce Wayland Dinwiddie without bond required while serving as tutor.
"In the event of the death of my wife Ruth Larsen Dinwiddie, I hereby give an option to my son Bruce Wayland Dinwiddie to purchase from the estate the residence 108 Fairway Drive, New Orleans, La. for the value thereof as established by the Central Appraisal Bureau of New Orleans, said option to continue for a period of one year from her death.
"I hereby appoint Louis J. Darrah and J. Mort Walker, Jr. or either of them or their partners as attorneys for my estate.
"Wholly written, dated and signed by me in the city of New Orleans, La. on this fifth day of October 1962.
George S. Dinwiddie"
NOTES
[1] Defendants are: Robert W. Elasasser, administrator of the succession of George Sumney Dinwiddie; Ruth Larsen Dinwiddie, the surviving wife; Bruce Wayland Dinwiddie, remaining forced heir of decedent; Louis J. Darrah & J. Mort Walker, Jr., trustees named in the will; and Canal Street Presbyterian Church and United Fund for the Greater New Orleans Area, special legatees.
[2] A copy of the entire will is annexed to this opinion as an appendix with the particular provisions referred to marked with Roman numerals.

These four provisions are:
I. "Out of my disposable portion of my half of the community property existing between me and Ruth Larsen Dinwiddie; I bequeath the sum of twenty-five thousand dollars ($25,000.00) to the Canal Presbyterian Church of New Orleans, Louisiana; and the sum of sixty-five hundred dollars ($6,500.00) to the United Fund for the Greater New Orleans Area to establish a `New Orleans Public Service, Inc. Endowment Fund,' income from which shall be used only for emergencies as determined by the governing body of said United Fund.
II. "I hereby bequeath to my wife Ruth Larsen Dinwiddie the remainder of all my disposable portion of my half of the community property existing between me and Ruth Larsen Dinwiddie and give her the usufruct of all of my one-half of said community as long as she lives. I hereby appoint her as tutor of my minor son Bruce to serve without bond.
III. "I hereby bequeath to my wife Ruth Larsen Dinwiddie; subject to the trust hereafter created, all of my disposable portion of my separate property and hereby give her the usufruct of all of my separate property, subject to the trust hereafter created, as long as she lives.
IV. "On her death all of the property representing my disposable portion (both community and separate) shall be paid to her heirs."
[3] It should be noted that the decedent herein was not an attorney and as in Succession of Fertel, supra, also wrote his will without legal assistance.