CHASEZ, Judge.
The decedent herein, Mrs. Lillian Thomas, widow by first marriage of Pat Mc-Gill and wife by second marriage of Francis L. Walters, died on April 2, 1964 in New Orleans, Louisiana, leaving a statutory will (R.S. 9:2442 et seq.) which, among other dispositions, included the following:
“Whatever money I have in a Savings Account in the Whitney National Bank is my separate money, which I inherited from my aunt, Mrs. Magdalena Auth Stevenson, or which I had before my second marriage. Of this money, I leave $1,-000.00 to my husband, Francis L. Walters, and the remainder I leave to the Whitney National Bank in New Orleans, as trustee for my brother, Charles F. Thomas, and I direct the bank to pay the interest and principal of this money to my brother as he may need it for his maintenance and medical expenses. If anything remains of the trust estate at the death of my brother, I leave the remainder equally to Mrs. Aline Le-compte Gassenberger, Mrs. Mary Leaber, Salvadore Michel and Alice Herrin and F. L. Walters, my husband.”
The will was submitted to the lower Court for probate by Francis L. Walters and Mr. and Mrs. J. C. Gassenberger, named co-executors. On the 16th day of April, 1964 the will was declared probated by that Court. On June 4, 1964 a descriptive list of the property left by the decedent was filed. Included was the savings account in the Whitney National Bank, No. 226298, with a credit balance of $5,780.01.
On May 27, 1965 Alcide J. Weysham filed a rule to show cause wherein he alleged that he was the duly qualified Natural Tutor of his minor daughter, Sheryl Clare Weysham, alleged to be the sole legatee under the last will and testament of Charles F. Thomas, whose succession had been opened; and that the executors of the succession of Mrs. Lillian Thomas had not deposited the money in the Whitney Bank account in Trust, but had instead withdrawn the sum of $5,882.88 from the savings account for purposes other than provided for by the will of Mrs. Lillian Thomas. Mr. Weysham suggested to the court that the sum of $5,882.88, less the amount of $1,000.00 due Francis L. Walters as legatee, should be deposited in the Whitney National Bank with the Whitney National Bank as Trustee. The rule was signed by the court, ordering that the executors give a complete accounting of the said funds. This rule, however, was continued indefinitely.
On June 4, 1965, an account was filed entitled “First Provisional Account” (“First *412 Provisional” was handwritten over the word “Final” which had been deleted by hand). This shows the proceeds in the Whitney Bank savings account in the sum of $5,882.88, together with the proceeds of a checking account in the National Bank of Commerce in New Orleans, in the sum of $4,277.54. These sums are totaled up and various expenses are subtracted from them including an Inheritance tax of $615.-13, which leaves a net balance of $525.03.
On June 22, 1965 Alcide J. Weysham filed an opposition to the final account (we presume it is in opposition to what is styled “First Provisional Account”) on substantially the same grounds as recited in his previous exception, and in addition alleged that the amount of $5,882.88, which should have been placed in trust, was used to pay all the debts of the succession, including tes-tamenary executors’ fees and the repayment of a loan to a finance company.
A petition was filed by Francis L. Walters and Mr. and Mrs. J. C. Gassenberger on September 3, 1965 praying that the Final Account and Tableau of Distribution be approved and homologated, after notice, and the funds distributed. The Final Account submitted therewith showed additional expenses charged to the sum of $525.03 and the proposed distribution of the remainder. The final account and tableau of distribution was approved and homolo-gated by the Court on September 30, 1965.
On May 5, 1966 Alcide J. Weysham petitioned the Court to have the Last Will and Testament of Mrs. Lillian Thomas declared null and void on the grounds that the above quoted disposition of the will is null and void under Article 1520, or alternatively, the provision designating the disposition of the remainder of the Trust Estate at the death of Charles F. Thomas was null and void. He alleged that Charles F. Thomas was the sole heir at law of Mrs. Lillian Thomas, and that his minor daughter, Sheryl Clare Weysham is the sole legatee under the Will of Charles F. Thomas, and that she is entitled to the entire succession of Mrs. Lillian Thomas, and that the acts of delivery of the property in this succession to the “supposed legatees” were null and void.
Francis L. Walters and Mr. and Mrs. J. C. Gassenberger excepted to the petition on the ground that it disclosed no right or cause of action.
The Court maintained the exception of no cause of action by judgment dated May 17th, 1966 and assigned written reasons which disclose that the Court found the following:
“It is the Court’s opinion that the exception of ‘no cause of action’ should be maintained for the reasons that the provision of the will, is not, in the Court’s opinion, a violation of the provisions of Article 1520 of the Civil Code. The Court is of the opinion that what the testatrix has done is to will the account in the Whitney National Bank to the Whitney National Bank, in trust for her brother as ‘income beneficiary’ of that portion of the trust which is ‘interest’ with the right of the Trustee to invade the principal as provided by Section 2068 of the Louisiana Trust Code.
“The testator has made those persons named in the last sentence of the herein quoted paragraph of the will the ‘principal Beneficiaries’ of the Trust, subject to the right of the Trustee to pay the brother of the testator such portion of the said principal as he may have need therefor for ‘maintenance and medical expense’.
“It is specifically provided by Section 1753 of the Louisiana Trust Code that the testator need not use ‘technical language’ in expressing the testator’s intention and that ‘a liberal construction shall be accorded the code in favor of freedom of disposition’. (Section 1724)
“HAVING maintained the exception of no cause of action it is unnecessary to decide whether or not the plaintiff has a ‘right of action’.”
*413 From this judgment, Mr. Weysham has appealed and argues to this Court that the Trust Code of 1964 was not applicable to this case because the Trust Code did not come into effect until July 29, 1964, after the date of the death of the testatrix; and that Article 1520 forbade this type of bequest as a prohibited substitution as interpreted by the case of the Succession of Simms, 175 So.2d 113 (La.App.).
On the other hand, the appellees argue that this is not a prohibited substitution, in view of the amendment of Article 1520 and of Article 4, Section 16 of the Louisiana Constitution in 1962. Also, R.S. 9:-1805 (then 9:1903) was likewise amended in that year and the Succession of Simms dealt with the will probated prior to the 1962 amendments to the Constitution and Article 1520 of the Civil Code, and thus these amendments were not considered. Furthermore, appellees argue, the bequest concerned in the instant case is not a prohibited substitution, but a fidei commissum, the prohibition of which has been deleted from our law by an amendment to Article 1520.
As contended by the appellants, the 1964 Trust Code did arise subsequently to the death of the testatrix herein, since the effective date of its adoption was July 29, 1964. The law applicable, then, is the law in existence in 1964 prior to the effective adoption of the Trust Code, and this seems to be virtually conceded by counsel for the appellees. This was one of the holdings of the Court in Succession of Simms, 175 So.2d 113 (La.App.1965), affirmed by the Supreme Court at 195 So.2d 114 (1966). The lower Court, therefore, was in error in applying the new Trust Code in toto to Mrs. Thomas’s will, since the rights of Mrs. Thomas’s heirs were fixed at the time of her death and, under Article 4, Section 15 of the Louisiana Constitution, there can be no divestiture of vested rights by the enactment of subsequent statutory law, such as the broad retroactive provisions of LSA-R.S. 9:2252, the savings clause of the new Trust Code.
Nonetheless, appellees argue that the 1962 changes in the law relating to trusts were broad enough to encompass Mrs. Thomas’s disposition. Prior to 1962, the pertinent portion of Article IV, Section 16 of the Louisiana Constitution read:
“ * * * No law shall be passed authorizing the creation of substitutions, fidei commissas or trust estate; except that the legislature may authorize the creation of trust estates for a period not exceeding ten years from the settlor’s death as to a beneficiary which is not a natural person; ten years from the settlor’s death as to a beneficiary who is a natural person or until the death of the beneficiary whichever is the longer period; and provided further that this prohibition as to trust estates or fidei commissas shall not apply to donations strictly for educational, charitable, religious purposes or trusts created by employers for the benefit of their employees.”
Subsequent to its amendment in that year, it reads:
“Section 16. The Legislature may authorize the creation of express trusts for any purpose, including but not limited to private trusts, trusts for the benefit of employees, trusts for educational, charitable, or religious purposes, and mixed trusts for any combination of purposes. Substitutions not in trust are and remain prohibited; but trusts may contain substitutions to the extent authorized by the Legislature. * * * ”
Article 1520 prior to 1962 reads:
“Substitutions and fidei commissa are and remain prohibited.
“Every disposition by which the donee, the heir, or legatee is charged to preserve for or to return a thing to a third person is null, even with regard to the donee, the instituted heir or the legatee.
*414 “In consequence of this article the trebel-lianic portion of the civil law, that is to say, the portion of the property of the testator, which the instituted heir had a right to detain, when he was charged with a fidei commissa or fiduciary bequest is no longer a part of our law.”
As amended in 1962 it reads:
“Substitutions are and remain prohibited, except as permitted by the laws relating to trusts.
“Every disposition not in trust by which the donee, the heir, or legatee is charged to preserve for and to return a thing to a third person is null, even with regard to the donee, the instituted heir or the legatee.” (As amended Acts 1962, No. 45, § 1).”
R.S. 9:1903 of the Trust Estates Law, in existence prior to the new Trust Code, was amended in 1962 to read:
“There may be one beneficiary or two or more beneficiaries as to income or principal or both. There may be separate beneficiaries of income and principal, or the same person may be a beneficiary of both income and principal, in whole or in part.”
The last sentence of the provision was added by the 1962 amendment. This was later adopted without change as R.S. 9:1805 of the 1964 Trust Code.
The Supreme Court of this State in the Simms case, supra, applied the law as it existed prior to 1962, and as enunciated in the cases of Succession of Guillory, 232 La. 213, 94 So.2d 38 (1957) and In Re Succession of Meadois, 135 So.2d 679 (La.App.1961). These cases all held that a bequest to a trustee in which the vesting of the interest of a third party in the trust estate did not occur until the death of the beneficiary thereto was a prohibited substitution. The Meadors case also stated that where the trust instrument referred to “any beneficiary of the remainder of the Trust Estate,” it tended to indicate that a prohibited substitution was present, as the intent would appear to be that the title was not actually to vest in the third party until the termination of the trust and not at the time the trust came into existence.
As noted, these two cases were decided on the law prior to 1962, and we must determine what the effect of the 1962 changes were upon the law of prohibited substitutions. By the amendment to Civil Code Article 1520 reference to fidei com-missa was simply omitted and “substitutions are and remain prohibited, except as permitted by the laws relating to trusts” and “every disposition not in trust by which the donee, the heir, or legatee is charged to preserve for and to return a thing to a third person is null, even with regard to the donee, the instituted heir or the legatee.”
The Constitutional amendment provided that “trusts may contain substitutions to the extent authorized by the Legislature”. However, “[substitutions not in trust are and remain prohibited.”
What is necessary, then, for the bequest of Mrs. Thomas to stand under the laws of 1962 is that the Trust Estates law provide for such a trust as was attempted in the bequest. R.S. 9:1903, quoted supra, specified the type of beneficiary interests allowable under that law in 1962. The amendment was added in 1962 to remove doubt engendered by the decision in Guil-lory that there may be successive beneficiaries of income or separate beneficiaries of income and principal. It was not intended to completely overrule Guillory, but the broad language in that case cast doubt upon the validity of any trust which separated income beneficiaries from principal beneficiaries. The holding of the Guillory and Meadors cases, that the trusts therein failed because the instruments failed to indicate that the disposition was made in favor of separate beneficiaries of the same trust, still stood in 1962. The language used by Mrs. Thomas in the instant case, as in the Guillory and Meadors cases, also *415 failed to indicate that the disposition was made in favor of separate beneficiaries of the same trust. To paraphrase, a bequest to B of the “trust” property after A’s death, as in the Guillory and Meadors cases, evi-' dences the intent that no interest vested in B until the death of A. Here, under a legally proper trust, the interest of Mrs. Aline Lecompte Gassenberger, Mrs. Mary Leaber, Salvadore Michel, Alice Herrin and F. L. Walters would have vested at the time the trust came into effect, when Mrs. Thomas died.
Contrary to the contention of the appel-lees, R.S. 9:1903 did not create a right to institute successive principal beneficiaries in the creation of trusts. R.S. 9:1921 of the Trust Estates law was amended in 1962 to read:
“Upon a principal beneficiary’s death, his interest shall vest in his heirs or legatees, as the case may be, subject to the trust.”
Professor Leonard .Oppenheim, of the Tulane Law School, stated in reference thereto at 37 Tulane Law Review 169, 182:
“The section was amended by rewriting the first clause so that instead of stating ‘Upon the beneficiary’s death’, the clause now provides ‘Upon a principal beneficiary’s death’. This amendment was necessary in order to clarify the fact that a principal beneficiary’s interest is vested upon the creation of the trust. Thus his interest passes upon his death to his heirs or legatees. On the other hand, an income interest cannot last beyond the life of the income beneficiary. Successive income beneficiaries are permissible but not successive principal beneficiaries.”
Further evidence of the fact that the interests of Mrs. Gassenberger, Mrs. Lea-ber, Salvadore Michel, Alice Herrin and F. L. Walters did not vest until the death of Charles F. Thomas, is that the bank was instructed “to pay the interest and principal of this money to my brother as he may need it for his maintenance and medical expenses” and they were only entitled to whatever might remain “if anything remains.” Thus it appears that title was not to vest in the above named parties until the death of Charles F. Thomas.
To dispose of appellees’ final argument, that the disposition of what remains, “if anything remain”, is indicative that a fidei commissum rather than a substitution was created, we look to the latest pronouncement by the Supreme Court on the distinctions between the two concepts, found in the Simms case:
“In Succession of Reilly, 136 La. 347, 67 So. 27, with the late Chief Justice Charles A. O’Niell as the author of the opinion, the court gives a short, but full and complete, crystallization of the jurisprudence of this state on prohibited substitutions and fidei commissa as re-probated in these constitutional and codal provisions, pointing out:
‘In more than a century of jurisprudence on the subject of substitutions and fidei commissa, prohibited by article 1520 of the Civil Code, the distinction between them and the difference in their effect has been consistently observed. The essential elements of the prohibited substitution are that the immediate donee is obliged to keep the title of the legacy inalienable during his lifetime, to be transmitted at his death to a third person designated by the original donor or testator. Such a disposition is null even with regard to the original donee or legatee. In the fidei commissum, whereby the donee or legatee is invested with the title and charged or directed to convey it to another person or to make a particular disposition of it, only the charge or direction, as to the ultimate disposition of the donation or legacy, is null and is to be considered not written, leaving the donation or bequest valid as to the donee or legatee. A substitution is an attempt on the part of the donor or testator to make a testament for his donee or legatee along *416 with his own will, and to substitute his own will for the legal order of succession from his donee or legatee. If permitted, the effect of a substitution would be to tie up the title and keep it out of commerce during the lifetime of the first donee, during which time neither he nor the person designated to receive the title at the donee’s death could alienate it.’ (The emphasis has been supplied.)
“In the same opinion the author observed: ‘A substitution' is necessarily a fidei commissum, but a fidei commissum, is not necessarily a substitution. In the fidei commissum the title is not tied up or kept out of commerce; the direction or charge, as to its disposition, is to be regarded only as a precatory suggestion addressed to the conscience of the donee or legatee, which, being illegal, but harmless can have no binding effect, and may he legally regarded as not written.’
“In subsequent cases treating of substitutions and fidei commissa, this language has been frequently quoted with approval. And, in a later case dealing with this subject, with Chief Justice O’Niell again the author of the opinion, the court held: 'A bequest of property to one legatee with the stipulation that on the condition that at his death and without any act of conveyance from him it shall belong to another legatee named in the will is a prohibited substitution.’ Succession of Heft, 163 La. 467, 112 So. 301. (The emphasis has been supplied.)
“It is obvious, therefore, that a prohibited substitution exists when a testator places the title of the property bequeathed in a first named legatee (referred to as the instituted heir) at his death, and directs that, at the end of a specified period, usually but not necessarily at the death of the instituted legatee, this title is to be turned over, transmitted, or passed to a second legatee (referred to as the substitute heir), with the result that both parties take their title directly from the testator, the title of the institute being one that he cannot alienate because of the charge that he is to transmit it to the substitute at some time in the future and the title of the substitute being one that the substitute cannot alienate because it does not exist until some date in the future when the property is to eventually ‘vest’ in him. Marshall v. Pearce, 34 La.Ann. 557. In thus indicating a desire to give the property away ‘twice’ to two named legatees, the testator, as pointed out in Succession of Reilly, supra, not 8nly makes his own will, but attempts also to make the will of the instituted legatee, thus endeavoring to determine the law of successions by substituting ‘his own will * * * for the legal order of succession from his donee or legatee.’ ”
Here, even though under Mrs. Thomas’s bequest she allows for the Trust Estate’s possible dissipation before the third parties take, nevertheless, this dissipation was only allowable for maintenance and medical expenses for Charles F. Thomas. Other than for this limited purpose the property was not to be alienated, and Mrs. Thomas attempted to vest the title directly from herself to Mrs. Aline Lecompte Gas-senberger, Mrs. Mary Leaber, Salvadore Michel, Alice Herrin and F. L. Walters, upon the death of Charles F. Thomas, when she stated in her will, “I leave the remainder . . .” This is a prohibited
substitution. The disposition attacked herein is declared to be a nullity and is set aside. The judgment below maintaining the exception of no cause of action is reversed, and the case is remanded for further proceedings in accordance with law and this opinion.
Reversed and remanded.