AYRES, Judge.
Mrs. Kate Crichton Gredler, by last will and testament, created trust estates in favor of her nephews Thomas Crichton, III, and John Hayes Crichton as principal beneficiaries, with their father, testatrix’ brother, Thomas Crichton, Jr., as trustee. This attack upon the will by Powell Crichton, Jr., and Mrs. Gloria Crichton McGehee, also a nephew and a niece of the testatrix, is primarily based upon the contention that the will contains prohibited substitutions. The defense consists of a denial that the will contains such substitutions and, in the alternative, that the Trust Code, LSA-R.S. 9:1721 et seq., and particularly Section 1723, authorizes dispositions made in trusts though they would contain prohibited substitutions if they were made free of trusts.
The defendants in addition to the above-named trustee and principal beneficiaries are Thomas Crichton, IV, Scott Jackson Crichton, Kate Curry Crichton, Anne Bernard Crichton, Lili Crichton, and John Hayes Crichton, Jr., children of the named principal beneficiaries, who come within the category of second named or alternative principal beneficiaries under the will, Kate Crichton and Edward Bailey Crichton, half sister and half brother of plaintiffs, who, together with plaintiffs, are legal heirs and ultimately named alternative and successive principal beneficiaries.
On trial, the validity of the will was upheld and plaintiffs’ demands were rejected. This appeal followed.
Appellants assert on this appeal that the trial court erred in failing to hold that decedent’s last will and testament was not void for one or more of the following reasons: (1) the will contains prohibited substitutions; (2) it attempts to suspend the vesting of legacies; and (3) it names *716 as beneficiaries persons who were neither ascertainable nor necessarily in being at the time of the death of the testatrix.
The will is an olographic testament dated March 6, 1963. After revoking all prior wills, naming Thomas Crichton, Jr., executor without bond, and providing for payment of debts, expenses and taxes, the testatrix proceeded to set forth the disposi-tive terms of her will as follows:
“ * * * and I do hereby give and bequeath to the said Thomas Crichton jr. as trustee for the benefit of his two sons, my nephews, Thomas Crichton third, and John H. Crichton, all the rest, residue and remainder of my property, both real and personal, except my residence with contents therein located on Creton Lake Road in the town of Bedford, County of Westchester, State of New York, and except also all moneys now to the credit of my account in the First National City Bank of New York (Mt. Kisco branch), shall thereafter be held in an undivided one-half interest in each of the aforementioned two trusts, each trust created and named for its above named beneficiary, and both trusts shall be Louisiana trusts, administered in the State of Louisiana, in accordance with the laws of Louisiana — I appoint Thomas Crichton jr., my brother, Trustee of each of above named trusts. In the event that Thomas Crichton jr. should die, become incapacitated or refuse to act, prior to the termination of these trusts, then the First National Bank of Shreveport, Louisiana, shall become Trustee. The Trustee, Thomas Crichton jr., shall have full powers to sell, mortgage, or lease all property, and otherwise manage all trust property with the same control and freedom as though Trustee owned said property personally.
“In the event that either beneficiary, Thomas Crichton third or John Hayes Crichton be not living when this trust is terminated, both income and corpus of such said trust shall be paid over or conveyed by Trustee to the child or children of said deceased beneficiary in equal, undivided portions. In event that neither a beneficiary nor his child or children are living upon the termination of this trust, then said income and corpus shall be paid over or conveyed by the Trustee to the other trust beneficiary or, if he be not living, then to his child or children in equal or undivided portions. In the event that neither beneficiary, no [sic] any of their children be living upon termination of these trusts, as above herein set forth, then the income and corpus of these trusts shall be paid over or conveyed to those children of my deceased brother, Powell Crichton; namely, Powell Crichton jr., Kate Crichton, Edward B Crichton and Gloria Crichton McGehee in equal or undivided portions.”
Reduced to essentials, therefore, the will creates two trusts for the decedent’s nephews, each comprising one-half of the estate. A trustee and a successor trustee are named and are given powers of administration. The intention is then expressed that upon the termination of each trust, if the named beneficiary thereof is not living, the trust property is to be delivered to the child or children of the deceased beneficiary, and, in the absence of a living child or children, to successively named alternate beneficiaries.
Under the basic laws of this State, the Constitution and Civil Code, substitutions are prohibited except as permitted by the laws relating to trusts. Under Louisiana Constitution Art. IV, § 16, granting authority to the Legislature to create trusts, it is provided: “Substitutions not in trust are and remain prohibited, but trusts may contain substitutions to the extent authorized by the Legislature.” (Emphasis supplied.) To the same effect are the provisions of LSA-C.C. Art. 1520 which prescribe that “Substitutions are and remain prohibited, except as permitted by the laws relating to trusts.” (Emphasis supplied.) This article provides, further, that “Every disposition not in trust by which the donee, the heir, *717 or legatee is charged to preserve for and to return a thing to a third person is null, even with regard to the donee, the instituted heir or the legatee.”
The essential .elements of a prohibited substitution are that the donee or legatee is charged to keep the property during his lifetime for another person to whom it is to be delivered at the death of the first donee or legatee. Thus, the prohibited substitution is an attempt on the part of a donor or testator to vest the title in his donee or legatee without the right of alienation or testamentary disposition or the capacity to transmit it to his heirs. The objection to the substitution is that, during the lifetime of the donee or legatee, neither he nor the person designated to acquire the title at the death of the donee or legatee can alienate the property, and the law prohibits, as a matter of public policy, the keeping of property out of commerce indefinitely and complicating the simple tenures by which alone its ownership is permitted.
These principles were emphasized by the late Chief Justice O’Neill in Succession of Reilly, 136 La. 347, 67 So. 27, 32 (1914), wherein it was observed:
“The essential elements of the prohibited substitution are that the immediate donee is obliged to keep the title of the legacy inalienable during his lifetime, to be transmitted at his death to a third person designated by the original donor or testator. * * * A substitution is an attempt on the part of the donor or testator to make a testament for his donee or legatee along with his own will, and to substitute his own will for the legal order of succession from his donee or legatee. If permitted, the effect of a substitution would be to tie up the title and keep it out of commerce during the lifetime of the first donee, during which time neither ■ he nor the person designated to receive the title at the donee’s death could alienate it.” (Emphasis supplied.)
These principles are recognized and given effect in the Trust Code. For example, “A testamentary trust is created at the moment of the settlor’s death.” LSA-R.S. 9:1821. “The interest of a principal beneficiary is acquired immediately upon the creation of a trust, subject to the exceptions provided in this Code,” that is, at the moment of the settlor’s death. LSA-R.S. 9:1971. “Upon a principal beneficiary’s death, his interest vests in his heirs or legatees, subject to the trust, * * LSA-R.S. 9:1972. No exceptions appear to be noted in the Trust Code. Moreover, in comments noted under the last of these sections, the redactors of the Trust Code say: “The interest of a principal beneficiary is not terminated by his death, but vests in his heirs or legatees,” and that “The doctrine le mort saisit le vif applies upon the death of a principal beneficiary in the same manner in which it would apply if there were no trust.” (Emphasis supplied.)
Thus, it is clear, in the absence of other and contrary provisions of Mrs. Gredler’s will, that Thomas Crichton, III, and John Hayes Crichton, designated as principal beneficiaries, would have, at the moment of her death, been vested with title to the bequests made to them, and that, on their deaths, their interests would pass to their heirs or legatees. However, contrary to the principles of law to which we have referred, the testatrix bequeathed the same property to others in the event the first-named principal beneficiaries should die before the termination of the trusts, that is, after the principal beneficiaries become vested with title to the inheritance. Similar provisions were made transmitting the property to a series of, or successive, beneficiaries in the event of the death of those prescribed by the will as ranking in the line of succession.
*718 Wills couched in language similar to that contained in the will in the instant case were held to contain prohibited substitutions and, hence, null and void in Succession of Guillory, 232 La. 213, 94 So.2d 38, 39 (1957), and Succession of Meadors, 135 So.2d 679 (La.App., 2d Cir. 1961—writs denied), despite a provision of the Trust Estates Law (Revised Statutes of 1950, 9:1791 et seq.), in the opening section of the statute, to the effect that:
“The creation of trust estates, as hereinafter set out, shall be lawful, and all trust estates so created shall be subject to the full force and effect of this Chapter. * * * Nothing in this Chapter shall he construed as applicable to or affecting donations in trust, or otherwise, for educational, charitable, or religious purposes or as abolishing forced heirship; or as authorising the creation of substitutions, fidei commissa, or trust estates except to- the limited extent expressly provided for herein.” (Emphasis supplied.)
In the Guillory and Meadors cases it was held, despite the aforesaid language of the Trust Estates Law, that prohibited substitutions exist when a testator places title to property bequeathed in a first-named legatee at the testator’s death and directs that, at the end of a specified period, usually but not necessarily at the death of the instituted legatee, such title is to be turned over to a second legatee with the result that both parties take their title directly from the testator, the title of the instituted beneficiary being one that he cannot alienate because of a charge that he is to transmit it to a substitute at some time in the future and the title of the substitute being one that a substitute cannot alienate because it does not exist until some date in the future when the property is to> eventually vest in him. See also: Succession of Walters, 202 So.2d 410 (La.App., 4th Cir. 1967-writs refused).
Thus, the conclusion is inescapable that the will in the instant case contains prohibited substitutions rendering it null and void unless such substitutions are authorized by the provisions of the Trust Code (LSA-R.S. 9:1721 et seq.). Whether the Trust Code authorizes substitutions such as are here concerned is an important and decisive question. As heretofore pointed out, Constitution Art. IV, § 16 provides, in part, that “ * * * trusts may contain substitutions to the extent authorized by the Legislature.”
Mrs. Gredler died April 15, 1965. The Trust Code enacted as Act No. 338 of 1964 was in effect at the time of her death ánd is the applicable law. Succession of Simms, 250 La. 177, 195 So.2d 114, 130 (1965).
Defendants place reliance on certain provisions of the Trust Code as legislative authorization for substitutions in wills creating trusts. For instance, LSA-R.S. 9:1737 provides, inter alia, “A trust containing a substitution authorized by this Code is valid.” It appears pertinent to inquire what substitutions are authorized by the Code. Section 1723 provides, in general language, “A disposition authorized by this Code may be made in trust although it would contain a prohibited substitution if it were made free of trust.”
Our review of the many provisions of the Trust Code has failed to reveal to us any action where the Legislature has defined or limited the “extent,” as directed by the aforesaid constitutional provision, that substitutions may be contained in wills creating trusts. Moreover, the general language of the provisions referred to and relied upon could not to any degree of certainty be said to nullify the positive and unambiguous provisions of Section 1971 to the effect that “The interest of a principal beneficiary is acquired immediately upon the creation of a trust,” that is, at the moment of the death of a testator (9:- *719 1821), and in accordance with the provisions of Section 1972 to the effect that a principal beneficiary’s interest vests at the moment of his death in his heirs or legatees. To hold that the substitutions contained in decedent’s will are authorized by any provision of the Trust Code, we would be required to hold that Sections 1971 and 1972 could be given no effect. Such a holding would be equivalent to striking these sections from the Code, which we have no authority to do.
Does the Trust Code provide that substitutions may extend to only one step in the transmittal process of title conveyance or to a series of steps extending to future generations ad infinitum ? The Legislature has not provided the extent or limitation as to the number of successive substitutions or the number of generations to which they may extend. The Legislature has provided no guidelines in this respect governing the creation of trusts. If a testator were permitted to tie up his property indefinitely by leaving it first to his children for life, then to his grandchildren for life, then to his great grandchildren for life, and so on, his property might forever be taken out of commerce and his descendants forever prohibited from dealing with the property as fee owners. The common law had to step in with a rule against perpetuities and limit the extent to which the testator was permitted to tie up his property for succeeding generations. Our French legal ancestors, faced with the same problem, developed the rule against prohibited substitutions. These are rules against the remoteness of vesting of interests in property.
No better example could be given of the problem which confronted both the common law and the civil law than the will of Mrs. Gredler in the instant case, for, as pointed out, she attempted to bequeath title to her property first to designated principal beneficiaries and then successively to others, extending to several future generations, some probably unborn and not yet even conceived.
Our search of the Trust Code for legislative authority within the constitutional limitation for the creation of trusts by will in the form, manner, extent, and number of successive substitutions provided in Mrs. Gredler’s will has been in vain, and we have not been referred to any particular section making provision for substitutions within the extent provided by constitutional authority.
Resolution of the issues enumerated and discussed is sufficient to a disposition of this matter and there remains no necessity for a discussion of the other various contentions and conditions advanced by either plaintiffs or defendants.
For the reasons assigned, the judgment appealed is annulled, avoided, reversed, and set aside; and
It is now ordered, adjudged, and decreed that the purported last will and testament of the decedent, Kate Crichton Gredler, dated March 6, 1963, be, and it is hereby, decreed null and void, and without force or effect, and, accordingly, that the proceedings admitting the will to probate and the judgment of possession rendered therein be, and the same are, likewise, decreed null and void; and that plaintiffs herein, Powell Crichton, Jr., and Mrs. Gloria Crichton Mc-Gehee, be, and they are hereby, recognized as legal heirs of the decedent and, as such, entitled to the possession of their respective interests in her succession. The rights of all parties having an interest to invoke any and all appropriate proceedings to settle this estate as an intestate succession are specially reserved.
Defendants-appellees are assessed with the costs of this opposition in both courts.
Reversed and rendered.
Rehearing denied.
PRICE, J., dissents from refusal.